[L. A. No. 14897. In Bank.—September 30, 1937.]

THE CITY OF LOS ANGELES (a Municipal Corporation), Plaintiff and Appellant, v. THE COUNTY OF LOS ANGELES (a Political Subdivision), Defendant and Appellant; LOS ANGELES RAILWAY CORPORATION (a Corporation), Respondent.

Ray L. Chesebro, City Attorney, Frederick von Schrader, Assistant City Attorney, and G. Ellsworth Meyer and Bourke Jones, Deputies City Attorney, for Plaintiff and Appellant.

Everett W. Mattoon, County Counsel, and J. H. O'Connor, Assistant County Counsel, for Defendant and Appellant.

Gibson, Dunn & Crutcher and Woodward M. Taylor for Respondent.

SHENK, J.—The City of Los Angeles sued the County of Los Angeles and the Los Angeles Railway Corporation in eleven actions to recover amounts aggregating $99,820.49. That sum represents percentages paid by the railway corporation to the county from the years 1911 to 1930 pursuant to eleven franchises granted by the county to the railway corporation but which, by reason of the annexation to the

city of the territory over which the railway corporation operated should have been paid to the city. (*San Francisco-Oakland Terminal Rys.* v. *County of Alameda,* 66 Cal. App. 77 [225 Pac. 304].) Among other defenses, both defendants interposed the plea of the statute of limitations. The actions were consolidated for trial. The court dismissed the action as to the railway corporation and rendered judgment for the plaintiff against the county for the full amount of its claim. The county appealed from the whole of the judgment, and the city appealed from that portion of the judgment which dismissed the action as against the railway corporation.

Ten franchises were granted to the railway corporation between February 1, 1906, and October 22, 1909, and the eleventh in March, 1923. All were issued pursuant to the provisions of the Broughton Act. (Stats. 1905, p. 177.) Under the provisions of that act two per cent of the gross receipts derived by the corporation from operations under each franchise was payable by it, beginning the sixth year after issuance thereof. Annexation to the city of a portion or all of the territory described in each franchise occurred prior to the time the first payment became due. All but two of the franchises and the ordinances authorizing them contained the provision that whenever territory described therein should be included within any municipal corporation, all rights thereunder reserved to the county, except the right to the percentage of the gross receipts, should inure to the benefit of the municipality. After annexation the railway corporation continued to pay to the county the percentages due under the act and the franchises. No notice or demand to do otherwise was served on it until May 6, 1930, when for the first time the city demanded payment of all future percentages becoming due. In November, 1931, three days prior to the filing of the actions, the city demanded of the railway corporation an accounting and payment to the city of all percentages theretofore paid to the county under said franchises. The city filed its itemized claim with the county board of supervisors on June 25, 1930. It also filed an amended itemized claim showing payments of $99,820.49 by the railway corporation to the county to and including the year 1930. On the appeal by the county the only question is whether the trial court correctly decided that none of the

items of the city's claim was barred by any statute of limitations.

The basis of the trial court's judgment is in the maxim *"Nullum tempus occurrit regi."* But wherever that maxim applies, as indicated by the authorities hereinafter cited, it refers only to rights of the sovereign. Such rights are not barred by lapse of time unless by legislation the immunity is expressly waived. The benefit of the doctrine as applied to actions brought by the state or for the benefit of the state, has been expressly waived by the provisions of section 345 of the Code of Civil Procedure. We are not here concerned with any exception to the application of such a statute, for example, as relating to rights in public land, involved in *County of Yolo* v. *Barney*, 79 Cal. 375 [21 Pac. 833, 12 Am. St. Rep. 152] ; *Board of Education* v. *Martin*, 92 Cal. 209 [28 Pac. 799], and similar cases. Under the facts here presented, at least as between the city and the county, we are concerned solely with a fiscal accounting, and not with a sovereign right as that term is usually interpreted. Therefore, if municipalities are bound by statutes of limitations at all, the City of Los Angeles must be held subject to them in the present case.

The city contends that inasmuch as words of a general statute do not apply to municipalities unless expressly so included, they are not affected by the provisions of limitation statutes, nor by the provisions of section 345 of the Code of Civil Procedure which refers only to the state. It is argued that the reference to the state only excludes any intention to include municipalities. Assuming that the section should be so construed and that the immunity might in some instances be available to municipalities, it is well settled generally that municipalities are subject to statutes limiting the time for commencement of actions. (*Metropolitan Railroad Co.* v. *District of Columbia*, 132 U. S. 1 [10 Sup. Ct. 19, 33 L. Ed. 231] ; *Brown* v. *Board of Education*, 148 Okl. 97 [298 Pac. 249] ; *City of Centerville* v. *Turner County*, 25 S. D. 300 [126 N. W. 605] ; *Bannock County* v. *Bell*, 8 Idaho, 1 [65 Pac. 710, 101 Am. St. Rep. 140], and cases cited in note, p. 155 et seq.; 37 Cor. Jur., p. 715, and cases cited in note; McQuillin, Mun. Corp., vol. 6, p. 669, sec. 2653, and cases cited in note; Wood on Limitations, vol. 4, p. 169, sec. 53.) In *San Francisco* v.

*Jones,* 20 Fed. 188, it was pointed out that, if the municipality is to be considered apart from the state and as a mere corporation, the statute of limitations applies without reference to section 345. It has been so held in this state. (*San Francisco* v. *Luning,* 73 Cal. 610 [15 Pac. 311]; *City of San Diego* v. *Higgins,* 115 Cal. 170 [46 Pac. 923]; *Dranga* v. *Rowe,* 127 Cal. 506, 507 [59 Pac. 944]; *Clark* v. *City of San Diego,* 144 Cal. 361 [77 Pac. 973]; *City of Fullerton* v. *County of Orange,* 140 Cal. App. 464 [35 Pac. (2d) 397].) In *School Dist. No. 34* v. *Joint School Dist. No. 34,* 156 Okl. 5 [9 Pac. (2d) 771], it was said, quoting from the syllabus in *Brown* v. *Board of Education of City of Duncan,* 148 Okl. 97 [298 Pac. 249] : ''Where a municipality brings action against another municipal subdivision of the state involving purely fiscal accounting between them, the complaining municipality will not be permitted to invoke the doctrine of governmental sovereignty in order to defeat the plea of the statute of limitations.'' The municipality, like any other person or corporation, must act diligently to preserve and protect its rights in a court of law or equity.

The plaintiff contends that section 4075 of the Political Code as it read in 1930, when its itemized claim was filed with the board, is inapplicable as a statute of limitations. That section then provided and now provides in part: ''The board of supervisors must not hear or consider any claim in favor of any public officer, person, corporation, company or association against the county, nor shall the board credit or allow any bill or claim against the county or district fund, unless the same be itemized . . . duly verified . . . and is presented and filed with the clerk of the board . . . within a year after the last item of the account or claim accrued. . . . '' Section 4078 permits an action to be filed upon any rejected claim within six months after final action of the board, but not afterward. An additional paragraph was added to said section 4075 by Statutes of 1931, page 197. The amendment prescribed that all claims payable out of any public fund under the control of the board of supervisors, whether such claim be founded upon contract, express or implied, or upon a tort liability, should be filed, presented and acted upon as theretofore prescribed, and in addition stated the items required when the claim rested upon a tort liability. However,

it is clear that the demand of the city was embraced within the language of section 4075 prior to the amendment. Whatever may have been the reason prompting the amendment of 1931, it must be said that moneys held by the county belonging to another were such items as were included in the language "any claim" as used prior to the amendment. There is likewise no merit in the contention that a municipal corporation should not be subject to the terms of the section. The legislature had the power to prescribe the time and manner of filing claims against the county and the conditions under which the county could be sued. The rule recognized and applied is that the state and it political subdivisions may not be sued except as specially authorized by statute. (*Hunsaker* v. *Borden,* 5 Cal. 288 [63 Am. Dec. 130]; *Whittaker* v. *County of Tuolumne,* 96 Cal. 100 [30 Pac. 1016]; *Colusa County* v. *Glenn County,* 117 Cal. 434 [49 Pac. 457]; *Liebman* v. *Richmond,* 103 Cal. App. 354 [284 Pac. 731]; *Union Bank & Trust Co.* v. *Los Angeles County,* 2 Cal. App. (2d) 600 [38 Pac. (2d) 442]; 7 Cal. Jur., pp. 555–557.) The same reasoning which makes general statutes of limitation applicable to municipalities governs in determining whether they must comply with conditions upon which litigants are permitted to sue a county. The history of judicial decision in this state does not disclose a general tendency to except municipalities from such restrictions. In fact the cases show the contrary. In *County of San Luis Obispo* v. *Gage,* 139 Cal. 398 [73 Pac. 174], a two-year period of limitation contained in the statute (Stats. 1893, p. 57), prescribing the conditions upon which the state may be sued, was applied. Other political subdivisions of the state are bound by the similar requirements of statutes permitting counties to be sued. (*Colusa County* v. *Glenn County,* 117 Cal. 434 [49 Pac. 457].)

The present actions were duly commenced within six months after final rejection of the claim by the board of supervisors. Pursuant to the holding in the case of *Welch* v. *County of Santa Cruz,* 30 Cal. App. 123, 125 [156 Pac. 1003], a claimant is entitled to recover from a county only those items between which a year has not elapsed, provided a claim is filed within a year of the last item. It necessarily follows that the city under section 4075 of the Political Code may recover only such items. The amounts received by the county

and the dates of their receipt were stipulated in the record. The defendant's exhibit purports to show what portions of these remittances were properly attributable to city operations. Assuming the correctness of its figures, all items in excess of $16,104.79 were barred by said section.

■ On the appeal by the city it is contended that the trial court erred in dismissing the action as to the railway corporation. We may assume that a cause of action was stated as against that corporation, in accordance with the general principle that payment to a person not entitled to receive it will not bar a recovery by the person rightfully entitled thereto. However, on the record here presented we are of the opinion that in addition to the statute of limitations a principle of equity intervenes to bar the city from any relief as against the railway corporation. A municipality is subject to the rules of laches and estoppel in those cases wherein equity and justice require their application. (*City of Los Angeles* v. *Cohn*, 101 Cal. 373 [35 Pac. 1002]; *Contra Costa Water Co.* v. *Breed*, 139 Cal. 432 [73 Pac. 189]; *County of Los Angeles* v. *Cline*, 185 Cal. 299 [197 Pac. 67]; *Times-Mirror Co.* v. *Superior Court*, 3 Cal. (2d) 309 [44 Pac. (2d) 547]; 10 Cal. Jur. 651, 652; Dillon, 5th ed., sec. 1194; McQuillin, Municipal Corporations, 2d ed., sec. 1818.) On the trial of the action the plaintiff did not introduce any evidence to establish its allegations of fraud or bad faith contained in its complaints. The facts at all times were known to all the parties. The payments were made by the railway corporation as the franchises in terms required them to be made. Payment otherwise would have subjected the railway corporation to a charge of forfeiture of its franchises. It is true that as early as 1915 the controversy arose between the city and the county as to which was entitled to the percentages payable under the franchises. But the payments were thereafter made by the railway corporation to the county over a period of more than fifteen years under the county's claim of right to receive them pursuant to the specific terms of the franchises, and with the full knowledge of the city and without any objection on its part. The city made no demand upon the railway corporation and took no action with respect to the matter until the subsequent events hereinabove related. The record supports the judgment in favor of the

railway corporation on the theory that the conduct of the city was tantamount to a representation on its part that it would not look to that corporation for payment so long as payments were made by it to the county, and that the entire controversy was a matter of fiscal adjustment solely between the city and the county. Under such circumstances it would be highly inequitable to subject the railway corporation to double payment of any items paid to the county before notice to the corporation that percentages under the particular franchise were to be paid to the city.

The portion of the judgment from which the plaintiff has appealed is affirmed. The judgment against the defendant County of Los Angeles is modified by reducing the principal amount to be recovered by the plaintiff to the sum of $16,104.79, and as so modified the judgment is affirmed, neither the city nor the county to recover costs of appeal.

Edmonds, J., Curtis, J., Waste, C. J., Langdon, J., Seawell, J., and Nourse, J., *pro tem.*, concurred.

Rehearing denied.