[Civ. No. 3351. Fourth Dist. May 17, 1945.]

CITY OF SAN DIEGO, Appellant, v. PETER VAN WINKLE et al., Respondents.

J. F. DuPaul, City Attorney, and Bertrand L. Comparet, Deputy City Attorney, for Appellant.

Luce, Forward, Lee & Kunzel for Respondents.

MARKS, J.—This is an appeal from that portion of a judgment which, during the present war emergency and present housing shortage in La Jolla in the city of San Diego suspended the enforcement of its provisions which "forever enjoined (defendants) from using, occupying or permitting

any person to use or occupy the real property and dwelling described in plaintiff's complaint as a duplex or two-family dwelling, or for any use or purpose not permitted in an 'R-1 Zone' under the terms of the Ordinance of the City of San Diego.''

Defendants are the owners of the real property in question located in La Jolla in the city of San Diego. It is situated in Zone R-1 as defined in the Zoning Ordinance of that city. Only single family dwellings can be erected in that zone.

In February, 1942, defendants commenced the erection of the building in question, which was completed in June. It was erected as a duplex, or two-family dwelling, in admitted violation of the Zoning Ordinance, although the trial court found that this violation was due to the mistake and misapprehension of defendants to the effect that authority had been granted for a variance in the Zoning Ordinance permitting them to erect the two-family building.

The trial court found on sufficient evidence that the building was a new, modern structure of attractive appearance; that it did not seem to be a duplex or two-family residence; that in appearance, maintenance or occupancy the building was not a detriment to the property or its vicinity; that several other two-family dwellings have been maintained in the vicinity, though erected prior to the effective date of the Zoning Ordinance. The evidence shows that the houses on each side of the buildings of defendants, and adjoining it, are two-family dwellings.

The apartments are occupied by two officers in the Armed Forces of the United States on active duty, together with their wives. One was a major in the Marine Corps and the other a captain in the Army. Both testified they had searched diligently and unavailingly for other living quarters. The major testified that he had searched from San Clemente, in Orange County, to San Diego, both inclusive, without success. There is other evidence of the overcrowded conditions existing in this area. The members of this court may take judicial as well as actual notice of these conditions. The finding to the effect that if either of the officers were evicted from his apartment he ''would be unable to find other accommodations in La Jolla or San Diego or any other place within a reasonable distance of their stations,'' is undoubtedly true, as is the further finding ''that large numbers of the families of officers and men of the Armed Forces of the United States

are now unable to find any accommodations reasonably or decently suited for their use." It was also found "that the public interest would not be jeopardized by the continuance of the use of said building as a two-family dwelling during the present emergency; and that it would be in the interest of the public generally and to the Armed Forces of the United States and the officers and families thereof to permit the continued use of the said premises during the present war emergency as a two-family dwelling."

Plaintiff argues that zoning ordinances are an exercise of the police power to promote the general welfare; that if the zoning ordinances are not arbitrary, discriminatory nor oppressive, the courts must enforce them on the suit of a public agency. (Citing, *Jones* v. *City of Los Angeles,* 211 Cal. 304 [295 P. 14]; *Miller* v. *Board of Public Works,* 195 Cal. 477 [234 P. 381, 38 A.L.R. 1479]; *City of Stockton* v. *Frisbie & Latta,* 93 Cal.App. 277 [270 P. 270]; *Kort* v. *City of Los Angeles,* 52 Cal.App.2d 804 [127 P.2d 66].) It is further argued that where the municipality is seeking to enforce its own zoning ordinance and proves a clear case of violation of its terms the trial court must enforce the ordinance as a matter of right and has no discretion to either refuse or to stay an injunction.

Defendants admit the foregoing rules when it is understood that they are broadly stated and generally applied. They argue, however, that when, as here, the immediate enforcement of the provisions of the zoning ordinance in this and other similar cases will do no good except to satisfy the esthetic senses of certain officials and some citizens, and that its immediate enforcement will harm members of the Armed Forces and war workers by depriving them of places to live and will thus hamper the war effort of the United States, the trial judge should have the discretion of suspending the execution of the injunction during the present war emergency and housing shortage in this locality. They rely on such cases as *Willis* v. *Lauridson,* 161 Cal. 106 [118 P. 530]; *Blackfield* v. *Thomas Allec Corp.,* 128 Cal.App. 348 [17 P.2d 165]; *Vesper* v. *Forest Lawn Cemetery Assn.,* 20 Cal.App.2d 157 [67 P.2d 368]; *Helms Bakeries* v. *State Board of Equalization,* 53 Cal.App.2d 417 [128 P.2d 167].

The case of *Fairchild* v. *Raines,* 24 Cal.2d 818 [151 P.2d 260], was an action based on a contract which provided that the occupancy of certain lots in Pasadena be restricted to

members of the Caucasian race until January 1, 1950. The defendants, colored Americans, were enjoined from occupying one of the restricted lots. The Supreme Court reversed the judgment and in considering the judicial discretion involved in an injunction case, said:

"It is the general rule that the granting or withholding of equitable relief involves the exercise of judicial discretion. (*Vesper* v. *Forest Lawn Cemetery Assn.* (1937), 20 Cal.App.2d 157, 163 [67 P.2d 368]; *Diederichsen* v. *Sutch* (1941), 47 Cal.App.2d 646, 649 [118 P.2d 863].) It is likewise true, as a general rule, that 'the equity courts will not enforce restrictive covenants by injunction in a case where, by reason of a change in the character of the surrounding neighborhood, not resulting from a breach of the covenants, it would be oppressive and inequitable to give the restriction effect, as where the enforcement of the covenant would have no other result than to harass or injure the defendant, without benefiting the plaintiff.' (*Hurd* v. *Albert* (1931), *supra*, 214 Cal. 15, 23 [3 P.2d 545].) As was said in *Trustees of Columbia College* v. *Thacher* (1882), 87 N.Y. 311, 317 [41 Am.Rep. 365, 367], 'It certainly is not the doctrine of courts of equity, to enforce, by its peculiar mandate, every contract, in all cases, even where specific execution is found to be its legal intention and effect. It gives or withholds such decree according to its discretion, in view of the circumstances of the case. . . .' "

In the instant case the trial court did grant the injunction sought by plaintiff, but suspended its execution during the present war emergency and the existing housing shortage in San Diego. We believe this to be a wise, equitable and judicious exercise of a judicial discretion under all of the circumstances of this case. The trial court should weigh the equities between the parties and should not lose sight of the results that would follow the immediate and strict enforcement of an injunction. The house with its two kitchens is doing no actual harm or damage to anyone. It is providing habitation to two officers of the United States who are devoting their time and energy to the defense of all of us. The plaintiff city "is seeking to enforce a statutory standard which is at least an approach to an ideal of living conditions rather than the specifications of a minimum of what a people engaged in a war can get along with" (*Realty Revenue Corp.* v. *Wilson*, 44 N.Y.S.2d 234), and is endeavoring to enforce an

ordinance which will result in an officer and his wife being ejected from their home when there is little chance of their finding another place to live, if the injunction could be enforced. Under these circumstances we must conclude that the trial judge was vested with a discretion, and that suspending the enforcement of the injunction during the war emergency and the housing shortage was a wise and judicious exercise of that discretion.

Nothing that we have said should be construed as prohibiting the city of San Diego from preventing the future construction of multiple dwellings in Zone R-1.

■ There is another and what we believe a stronger reason for upholding the judgment in this case. Although it was not presented to the trial judge it deserves consideration here.

Section 6(a) of "Rent Regulation For Housing," issued by the Office of Price Administration under authority of the Emergency Price Control Act of 1942 [56 Stats.L. 23; 50 U.S.C.A.App. §§ 901-946], effective in San Diego, contains the following:

"So long as the tenant continues to pay the rent to which the landlord is entitled, no tenant shall be removed from any housing accommodations, by action to evict or to recover possession, by exclusion from possession, or otherwise, nor shall any person attempt such removal or exclusion from possession, notwithstanding that such tenant has no lease or that his lease or other rental agreement has expired or otherwise terminated, and regardless of any contract, lease, agreement or obligation heretofore or hereafter entered into which provides for entry of judgment upon the tenant's confession for breach of the covenants thereof or which otherwise provides contrary hereto, . . ." Exceptions follow which are not material here.

Such provisions of law are not new to American jurisprudence. The State of New York passed a law of similar import as a sequence to the activities following the First World War. (Chap. 942, et seq., N.Y. Stats. 1920.) This act was upheld as a constitutional exercise of the police power of the State by the Court of Appeals of New York. (*People* v. *La Fetra*, 230 N.Y. 429 [130 N.E. 601, 16 A.L.R. 152].) The Supreme Court of the United States reached a similar conclusion in the case of *Marcus Brown Holding Co., Inc.* v. *Feldman*, 256 U.S. 170 [41 S.Ct. 465, 65 L.Ed. 877].

A quite similar law was passed by the Congress and made

applicable to the District of Columbia. (Act of Oct. 22, 1919, C 80, Title 2,—District of Columbia Rents.) This act was upheld by the Supreme Court of the United States. (*Block* v. *Hirsh*, 256 U.S. 135 [41 S.Ct. 458, 65 L.Ed. 865].)

It was further held in *Chastleton Corp.* v. *Sinclair*, 264 U.S. 543 [44 S.Ct. 405, 68 L.Ed. 841, 843], that the provisions of the law became inoperative after the housing emergency had passed.

The effect of section 6(a) of the Rent Regulation For Housing as applied in San Diego, was considered in the case of *Brown* v. *Lee* in the United States District Court, Southern District of California. Mrs. Lee owned residential rental property in San Diego which was occupied by tenants who were not injuring the property and were paying the rent. She desired to withdraw the property from the rental market but did not intend to occupy it herself. She gave the tenants the notices to vacate, required by California law, and upon their failure to surrender possession sought to eject them through an action in the Municipal Court of the City of San Diego. She recovered judgment which she proposed to enforce by process. The administrator for the Office of Price Administration brought an action in the United States court to enjoin Mrs. Lee from enforcing her judgment and ejecting her tenants. He was successful in his action.

The question of a preliminary injunction was argued before and decided by the Honorable Paul J. McCormick who rendered an opinion (not officially published) on March 23, 1943. It was held that the Emergency Price Control Act of 1942, and the Rent Regulation For Housing adopted under its provisions, were a constitutional exercise of the power granted to Congress (U.S. Const., art. I, §8,) "to wage successful war, to raise and support armies, to provide and maintain a navy, to make rules for the government and regulation of the land and naval forces, to provide for the common defense and general welfare of the United States,"—to adopt the language of the Honorable District Judge. He said further: "The Act itself is founded in the environment of the war effort, and that everything that is covered by the Act, and that does not unreasonably invade private rights, is within the power of Congressional legislation under the provisions of the Constitution that I have mentioned. If, as was the case under the selective service decisions of the Supreme Court in World War I, the individual is subject to involun-

tary induction into the Army, it seems to me there is less reason to say that the property owner can conduct himself, with respect to the occupancy of his property by others, as he pleases. . . . So here, in a congested area, such as San Diego, where the continuity of war activity depends upon the facilities that are available to war workers in that area, it seems to me it becomes a part of the contract of tenancy and all of those regulations that are properly promulgated under the price control act are a part of that contract in and of itself; so that when a property owner rents his property to a tenant, except for the provisions that are covered in the regulations, the tenancy itself is a part of the contractual right, and the Government, as the agency intrusted with the enforcement of that right, is, in effect, a party to the contract.''

The only conclusion to be drawn from the foregoing authorities is that under the facts disclosed the defendants cannot evict the Army officers from the rented premises.

█ If the execution of the judgment in the instant action, had not been stayed by the trial court, defendants would be compelled to attempt to eject one of the officers. Any action of ejectment could be successfully defended under the regulations above quoted. Such an attempt could and probably would result in an injunction by the federal courts. The defendants could not obey both court orders. This brings this case squarely within the rule announced in the case of *Realty Revenue Corp.* v. *Wilson,* 182 Misc. 552 [50 N.Y.S. 2d 941].

The Realty Revenue Corporation owned an apartment house in the city of New York which did not conform to the health and safety laws. As stated by the court, ''The most important of the alleged violations consist of the failure to provide a sprinkler system, an interior fire alarm system and fireproof self-closing doors from apartments to public stair halls.'' The Commissioner of Housing and Buildings of the City of New York required the owner to cause the building to be vacated ''as unfit for human habitation and dangerous to life and health'' by reason of the defects mentioned.

The owner brought the action to enjoin the commissioner from enforcing the order. It developed that the War Production Board had refused to give a priority to the owner for materials necessary to make the required changes so the owner was unable to make the building safe and to conform with the requirements of the law. There were about 500 people living in the apartment house. The Supreme Court

adopted certain portions of the opinion of the trial judge, from which we quote the following:

"Contrary to what perhaps may be a popular impression, the constitutionality of law depends, not upon abstract theories of philosophy, but upon a very practical application of laws to facts, and a statute which is valid as to one set of facts may be invalid as to another, and one which is valid when enacted may become invalid by change in the conditions to which it is applied. *Nashville, C. & St. L. Ry.* v. *Walters,* 294 U.S. 405, 414, 415, 55 S.Ct. 486, 79 L.Ed. 949; *Municipal Gas Co. of City of Albany* v. *Public Service Commission,* Second Dist., 225 N.Y. 89, 95, 96, 121 N.E. 772 [773, 774]. Owners of multiple dwellings may be subjected to uncompensated obedience to many regulations which are costly and burdensome to them, but to enforce against them regulations which the Federal Government says they shall not comply with would be an unreasonable and unconstitutional deprivation of their rights. State commands and Federal prohibitions cannot be allowed to become upper and nether millstones between which the rights of citizens are ground to bits. . . . The commissioner will not be stayed if walls, floors or ceilings are falling down, or if unsanitary conditions make disease imminent. It thus may be that if inability to get materials continue for a long period there may come a time when owners of such dwellings will have to submit to having them vacated. Upon the papers now presented it does not appear that that point has been reached in this case. . . . The State's statutory standard stands upon the statute books capable of enforcement whenever and wherever the Federal prohibition does not interfere, but while the Federal prohibition continues, and in those cases to which it applies, the State's statutory standard remains in suspended animation."

It was concluded that as the apartment house was "reasonably safe for human habitation" the Commissioner of Housing and Buildings of the City of New York should be enjoined from enforcing the order to vacate the building "during the present emergency or until such time as the War Production Board releases the required materials."

The doctrine that federal laws or regulations passed under constitutional authority suspend state or local laws or regulations in conflict with them is not new. In *Florida* v. *Mellon,* 273 U.S. 12 [47 S.Ct. 265, 71 L.Ed. 511], it was said:

"The act is a law of the United States, made in pursuance

of the Constitution, and therefore the supreme law of the land, the Constitution or laws of the states to the contrary notwithstanding. Whenever the constitutional powers of the federal government and those of the state come into conflict, the latter must yield. *Ex parte Virginia,* 100 U.S. 339, 346, 25 L.Ed. 676; *Brown* v. *Walker,* 161 U.S. 591, 606, 16 S.Ct. 644, 40 L.Ed. 819; *Cummings* v. *Chicago,* 188 U.S. 410, 428, 23 S.Ct. 472, 47 L.Ed. 525; *Lane County* v. *Oregon,* 7 Wall. 71, 77, 19 L.Ed. 101.'' (See, also, *Miller* v. *Kaliwerke Aschersleben Aktien-Gesellschaft,* 283 F. 746; *Brenen* v. *Dahlstrom Metallic Door Co.,* 189 App.Div. 685 [178 N.Y.S. 846].)

We have reached the conclusion that the trial court was not guilty of any breach of discretion in suspending the execution of the injunction during the present war emergency and the existing housing shortage in San Diego, and that he was fully justified in exercising his equitable powers in so doing.

The judgment is affirmed.

Barnard, P. J., and Griffin, J., concurred.