[Civ. No. 16061.   Second Dist., Div. One.   Nov. 10, 1948.]

JEANETTE G. DONOVAN et al., Appellants, v. THE CITY
OF SANTA MONICA et al., Respondents.

Jeanette G. Donovan and John F. Donovan, in pro. per., Edward S. Cooper and John Boyce-Smith for Appellants.

Hector P. Baida for Respondents.

YORK, P. J.—This is an appeal from a judgment restraining plaintiffs from using the premises known as 136 Georgina Avenue, Santa Monica, for other than a single-family residence, and directing them to remove such additions and alterations to the original structure as were made after its completion.

The second amended complaint filed on August 12, 1944, alleges that on May 23, 1944, a criminal complaint was filed in the Municipal Court of the City of Santa Monica charging plaintiffs with maintaining a multiple dwelling in a single-family zone, in violation of city zoning ordinance number 656. By the instant action, plaintiffs sought a declaratory

judgment of their legal rights and duties under the terms of the ordinance, and also sought to enjoin defendants from enforcing the same.

Thereafter, defendants filed their cross-complaint seeking to enjoin plaintiffs from using the improvements on the said premises except as a single-family residence, and to require them to remove all improvements which expanded the residence beyond the size specified in the application for permit of May 15, 1926.

In their answer to the cross-complaint, plaintiffs set up certain affirmative defenses in an effort to justify the additions made and their claim to a right to maintain them, as to which a motion to strike was granted by the trial court.

The judgment was for defendants on the cross-complaint, the court finding, among other things, that on May 4, 1926, plaintiffs made application for a permit to erect a one-story garage building for storage of automobiles; and on May 15, 1926, they made application for a permit to erect "*a single-family residence* consisting of 15 rooms"; and that both of said buildings were completed in the year 1926.

Said application for permit, a photostat copy of which is filed herein as defendants' Exhibit D, specifies the building as a "Residence. Number of rooms 15."

The trial court further found: (A) That in 1926, plaintiffs converted the said single-family residence into three separate apartments; (B) that between December, 1927, and January, 1929, plaintiffs added to said converted single-family residence three separate living units, now designated as numbers 16, 17 and 11½; (C) that in the year 1926, plaintiffs converted and enlarged the said one-story garage building to accommodate 9 automobiles, and added thereto three separate units or apartments, now designated as numbers 9, 9½, and 10½; That in April, 1933, an apartment or separate living unit was added to the said converted single-family residence, and is now designated as apartment number 12; that between December, 1937, and May, 1944, there were 9 units added to the converted residence, now designated as numbers 4, 11, 7, 6½, 14, 15, 19, 10 and 6; that during said period four separate living units were added to the one-story garage building, and are now designated as numbers 8½, 12½, 8 and 7½; that in May, 1938, an additional single-family dwelling was erected upon said premises, and is now designated as apartment number 5. That such alterations, conversions, repairs, constructions and additions were made in violation of the

provisions of ordinances 211, 439 and 656, and "that there is now contained upon said premises twenty-four separate living units or apartments now housing twenty-four separate families."

The court further found that such conversions and additions were made by plaintiffs with full knowledge of the ordinances and without a building or any permit therefor; except that a garage consisting of one room, size 36 x 22 feet, constructed pursuant to an application for a building permit dated May 4, 1926; a single-family residence consisting of 15 rooms, size 65 x 70 feet, constructed pursuant to an application for a building permit dated May 15, 1926, and one tool shed, size 14 x 8 feet, constructed pursuant to an application for a building permit dated July 2, 1943, are the only structures lawfully erected and maintained on the said premises during the times herein referred to.

That the kitchenette and bathroom, consisting of 2 rooms, size 6 x 20 feet, constructed pursuant to an application for a building permit dated April 19, 1933, were unlawfully constructed and are illegal and void; that the additions and alterations consisting of one room, size 7 x 8 feet, constructed pursuant to an application for a building permit dated November 15, 1934, were unlawfully constructed and are illegal and void; that the repair of dry rot in the main building was lawfully done pursuant to an application for building permit dated December 2, 1939; that the foregoing six applications for building permits "were the only applications made by the plaintiffs or any one on their behalf for the erection of, alteration of, or additions to structures on said premises."

The judgment based upon such findings was entered on November 26, 1945, and paragraph 2 thereof permanently enjoined and restrained plaintiffs:

A. From using, occupying or maintaining the premises described for any purpose other than a single-family dwelling as defined by ordinance number 656 (commissioners' series) viz.: "a building containing only one kitchen, designed for or used to house not more than one family, including all necessary employees of such family," together with use of the garage building for the sole purpose of providing shelter or storage of vehicles owned or operated by the plaintiffs or members of their family or their employees, and the use of the tool shed on said premises for the purpose of storing tools, equipment and other materials.

B. From using, occupying or maintaining said premises for any purpose not enumerated in the preceding subparagraph A.

C. From further violating ordinance number 656 or any of the provisions of any zoning ordinance that may be regularly adopted by the city of Santa Monica and relating to said real property.

D. From maintaining said premises in violation of the building ordinances of the city of Santa Monica or building code of the State of California.

''3. That the plaintiffs and cross-defendants be, and they are hereby required and directed to remove from the main structure on said premises apartments or units numbered 16, 17, 11½, 12, 4, 11, 7, 6½, 14, 15, 9, 10 and 6, and to reconvert the main structure on said premises into a single-family dwelling containing not more than fifteen rooms and not more than one kitchen, and designed for and to be used for the sole purpose of housing not more than one family including all necessary employees of such family so that the dimensions of the exterior of said structure when so reconverted and said apartments removed shall not exceed sixty-five (65) feet by seventy (70) feet; that plaintiffs and cross-defendants remove from the garage structure on said premises apartments or units numbered 9, 9½, 10½, 8½, 12½, 8 and 7½, so that said garage shall contain no housing accommodations and reduce the size of said garage so that the dimensions of the exterior of said garage shall not exceed thirty-six (36) feet by twenty-two (22) feet; that the cottage erected on said premises referred to as apartment number 5 shall be removed from said premises; that one tool shed, fourteen (14) feet by eight (8) feet shall remain on said premises; that no buildings or structures of any kind, except the main structure and garage, both as herein ordered reconverted and the aforesaid tool shed shall remain on said premises.

''4. That the plaintiffs and cross-defendants shall comply with the provisions of paragraph 2 of this judgment not later than the 28 day of Jan., 1946, and they shall comply with the provisions of paragraph 3 not later than the 15 day of March, 1946.''

Appellants assert that their constitutional rights were violated because the city granted privileges to other persons not available to them. In this connection it is urged that ''a thorough trial should be had to determine whether the

variances and the permissive uses by the city granted to other persons, was done under substantially the same conditions under which it had been denied to the plaintiffs. . . . such evidence as was admitted tends very strongly, and almost without contradiction, to establish that other citizens were extensively allowed to operate under exactly the same circumstances and conditions surrounding the plaintiffs."

With respect to the use made of other property in the neighborhood, the strongest showing made was the testimony of Mr. Donovan that 123 Georgina Street located directly across the street from his property contained four units which were occupied by four families. Appellants introduced in evidence a map (Plaintiffs' Exhibit 2) showing the area extending from Ocean Avenue to Fourth Street in Santa Monica, upon which the lots colored "dark blue, marked R-1, indicates single-family residential. R-2 which is green is limited multiple residential. R-3, which is yellow, indicates multiple residential (institutions). . . ."

By stipulation of counsel, the trial court viewed the area in question, and later in the trial reported his observations, made as a result thereof, to the following effect: That he viewed in a general way the locality pictured in blue on Exhibit No. 2, and "did check rather carefully Marguerita Avenue and Georgina Avenue and Alta Avenue between Fourth Street and Ocean Avenue"; that none of the houses along Georgina have the appearance of being an apartment house building with the exception of the Donovan place. "Of course, I am excluding the apartment house zone or the income zone that is in yellow." There are within the blue on Georgina 29 houses. "The only picture introduced of houses show six out of that number in which the use is claimed to have been for more than a single-family dwelling. The next street south is Marguerita, and with reference to that street there are located on it 23 residence structures, according to the map, Exhibit 2, and two pictures have been introduced to show properties in which it is claimed that the use is not limited to a single-family dwelling. That is 233 Marguerita, and with reference to that place I might say that that could be classed as a single-family dwelling, looking at it from the outside, and it might well be classed as a two-family dwelling. 314 Marguerita, from the outside, has the appearance of being an old-fashioned one family dwelling house. . . .

"Now the locality in question as I viewed it has nothing whatsoever to indicate that the neighborhood, the immediate neighborhood on Georgina and Marguerita, are not essentially single-family residence dwellings, and it cannot be said that that particular neighborhood is anything but a single-family dwelling residence neighborhood, and it has not been changed in character. The fact that further south there are here and there apartment houses and bungalow courts does not change the situation on Georgina Street, which is here involved, and no claim can be sustained to a change in the neighborhood which would warrant this court to hold that the change which is now apparent in the Donovan property is justified. . . .

"The fact that here and there along the street some of the properties may be used as *single-family* (multiple) dwellings is a matter on which the plaintiffs in this case cannot complain. I assume if the plaintiffs had asked for a variance so that their property might have been used by some three or four families, that perhaps would have been granted, but the biggest showing here made is that there is at one residence along this street, four families within it. That is quite a different matter from something like 18, on, upwards."

The evidence adduced at the trial herein clearly establishes the fact that no one in the immediate neighborhood of appellants' property has even attempted "to operate under exactly the same circumstances and conditions surrounding the plaintiffs." Hence, that appellants are not justified in their claim that the zoning ordinances here under consideration violate the Fourteenth Amendment to the federal Constitution because, as enforced, they granted privileges to others not available to appellants.

As stated in *Wilkins* v. *City of San Bernardino*, 29 Cal.2d 332, 338 [175 P.2d 542]: "Where it is claimed that the ordinance is unreasonable as applied to plaintiff's property, or that a change in conditions has rendered application of the ordinance unreasonable, it is incumbent upon plaintiff to produce sufficient evidence from which the court can make such findings as to the physical facts involved as will justify it in concluding, as a matter of law, that the ordinance is unreasonable and invalid. It is not sufficient for him to show that it will be more profitable to him to make other use of his property, or that such other use will not cause injury to the public, but he must show an abuse of discretion on the

part of the zoning authorities and that there has been an unreasonable and unwarranted exercise of the police power. (See *Rehfeld* v. *City of San Francisco*, 218 Cal. 83, 85 [21 P.2d 419].)" The record is replete with evidence that the so-called Donovan place is the only one of its kind in the neighborhood, i. e., a rambling structure containing 24 apartments occupied by 24 families.

Throughout the entire proceeding, appellants have sought to justify their noncompliance with the zoning ordinances on the ground, among others, that an apartment house is maintained just across a 20-foot alley to the west of appellants' property. However, the map attached as an exhibit to the cross-complaint filed herein, discloses that the apartment referred to is built on a lot facing another street which is zoned for income property.

And, as stated in *Reynolds* v. *Barrett*, 12 Cal.2d 244, 249 [83 P.2d 29]: "The line between business and residential property must be drawn somewhere. The mere fact that business property is located across the street or even adjoining the residential property involved does not determine that the ordinance is invalid or discriminatory. (*Smith* v. *Collison*, 119 Cal.App. 180 [6 P.2d 277]; *Feraut* v. *Sacramento*, 204 Cal. 687 [269 P. 537].) The fact that nearby business property has the same characteristics as the parcel involved in the proceeding does not justify the court in substituting its judgment for the legislative judgment. (*Ex parte Hadacheck*, 165 Cal. 416 [132 Pac. 584, L.R.A. 1916B 1248]; *Brown* v. *City of Los Angeles*, 183 Cal. 783 [192 P. 716].)"

Appellants further urge that because of its inactivity for a period of 20 years, respondent city is now estopped to enforce the zoning ordinance as against them. In support of this contention, appellants cite the cases of *Los Angeles* v. *Cohn*, 101 Cal. 373 [35 P.2d 1002], and *Times-Mirror Co.* v. *Superior Court*, 3 Cal.2d 309 [44 P.2d 547].

With respect to this subject, it was stated in *Aebli* v. *Board of Education*, 62 Cal.App.2d 706, 728 [145 P.2d 601]: "There is no doubt a modern tendency to invoke estoppels against public authority in exceptional circumstances. (*La Societe Francaise* v. *California Emp. Com.*, 56 Cal.App.2d 534 [133 P.2d 47]; *Times-Mirror Co.* v. *Superior Court*, 3 Cal.2d 309 [44 P.2d 547]; *McGee* v. *City of Los Angeles*, 6 Cal.2d 390 [5 P.2d 925]; *City of Los Angeles* v. *County of Los Angeles*, 9 Cal.2d 624 [72 P.2d 138, 113 A.L.R. 370].) But these cases

all involved most unusual sets of facts. There is no doubt that the general rule is that estoppels will not be invoked against the government or its agencies except in rare and unusual circumstances. (See cases collected in 19 Am.Jur. p. 818, § 166.)''

In *Los Angeles* v. *Cohn, supra,* the city brought suit to recover possession of a small tract of land at the intersection of Spring and Main Streets, which it claimed as a part of a public street, and upon which defendant's predecessor had erected a building. Before the building was erected, with the knowledge and concurrence of the owner, the city instructed its agent to investigate and report to the council its rights in the land. The agent made the investigation and reported that the city had no claim or title thereto. Nothing more was ever done by the city until the instant action was brought 20 years later. It was there held, when a party under an honest conviction of right has taken possession of a portion of one of the streets or alleys of the city and expended his money in erecting buildings thereon without interference on the part of the public, these, or perhaps other circumstances connected with adverse possession for the statutory period may afford good grounds for estoppel.

In *Times-Mirror Co.* v. *Superior Court, supra,* a proceeding in mandamus directing the superior court to proceed to final determination certain condemnation proceedings, the doctrine of estoppel was permitted to be invoked against the city of Los Angeles which proposed to abandon such condemnation proceedings after the petitioner had constructed a new building on another location in reliance upon such condemnation. The court there stated: ''It unquestionably appears from the foregoing that petitioner in good faith constructed the new building upon the understanding that the site of the old building was included in the civic center plan and it was necessary from the nature of the business in which it was engaged that it should prepare in due time to relocate its plant.''

It is obvious that in each of the two cited cases, the exception to the general rule of estoppel prevailed by reason of an innocent party's reliance in good faith upon an affirmative act of the municipality and a change of position to the detriment of such party.

There appears to be no analogy between the facts here presented and those cases in which the doctrine of estoppel has been invoked against a municipality.

Although, as heretofore mentioned, appellants' application for permit made on May 15, 1926, sought permission to erect a single residence consisting of 15 rooms, appellant · John F. Donovan testified at the trial herein that in October of 1926, the completed improvements consisted of (1) a three-unit apartment building, (2) with servants' quarters in the rear of the main building, (3) chauffeur's quarters, and (4) nine-car garage with extending wash rack and a little gardener's lodge adjoining the garage. That the first additions were made in 1936 when two apartments were built. These additions and alterations continued until in 1944, 24 apartments occupied by 24 families were maintained upon appellants' property.

It is not disputed that on February 2, 1922, respondent city regularly enacted and adopted zoning ordinance number 211; that on August 14, 1929, ordinance number 439 was adopted, and that said city on November 1, 1937, duly enacted ordinance number 656. Each of these ordinances divided the city into zones and established an ''A'' or ''R-1'' zone for the area including appellants' property, prohibiting the erection of any building or structure on any lot within the area so designated ''other than a single-family dwelling, together with the usual accessories . . . including a private garage containing space for not more than four (4) automobiles, and no more than one such residence shall be erected or placed on any lot within said zone 'A.' ''

Section 4 of ordinance number 656, provided in part as follows: ''One family dwellings. Not more than one (1) one-family dwelling shall be permitted on any one (1) lot. Separate servants' quarters may be established in connection with one-family dwellings of seven (7) rooms or more, exclusive of bathrooms, when located on lots having an area of not less than seven thousand five hundred (7,500) square feet. Any use or uses other than the use or uses specifically permitted on premises located in the R-1 (Single-Family) Residence District by the provisions of this section are hereby prohibited in said district.''

In the spring of 1926, with knowledge of the then existing zoning ordinance number 211, appellants applied for a permit to build a single dwelling of 15 rooms, and then, according to their own admissions, they proceeded to erect a three-unit apartment.

With this in mind, together with the additional facts established at the trial and hereinabove recited, it is obvious

that appellants at no time exercised that measure of. good faith which would entitle them to invoke the doctrine of estoppel against respondents.

In an annotated note in 119 American Law Reports, page 1516, the following appears:

"Notwithstanding that the holder has acted under a permit for the construction of a building in violation of a zoning or fire limit ordinance, a municipality may enforce the ordinance against him, where the permit was granted as a result of the applicant's misrepresentation of or failure to disclose facts showing that the building would contravene the ordinance. . . .

"In *Magruder* v. *Redwood* (1928), 203 Cal. 665, 265 P. 806, the court indicated that the issuance by the city board ·of trustees of a permit to erect a shed, which after completion the owner devoted to use as a lumberyard in violation of a zoning ordinance, did not prevent the board from enforcing the ordinance, where there was no evidence that at the time of issuing the permit it knew the purpose of which the shed was to be used."

[6] In their closing brief, appellants urge that "after 20 years of acquiescence, to enjoin occupancy of the premises by more than one family, under today's tragic housing conditions, violates elementary and fundamental principles of equity."

In reply to this, the following statement in 119 American Law Reports, page 1511, appears applicable: "It has been held that the mere fact that, without more, city officials fail ·to enforce a zoning ordinance against a violator will not estop the city from subsequently enforcing it against him."

Also the statement in *Wilkins* v. *City of San Bernardino,* 29 Cal.2d 332, 344 [175 P.2d 542], to wit: "The fact that there is a housing shortage might justify the city, or perhaps even the court, under proper conditions, in temporarily suspending the operation of the zoning ordinance during an emergency (see *City of San Diego* v. *Van Winkle,* 69 Cal. App.2d 237 [158 P.2d 774]), but it furnishes no justification for a judicial decision voiding the operation of the ordinance for all time to come or for plaintiff's action in violating the ordinance."

As stated in *Acker* v. *Baldwin,*· 18 Cal.2d 341, 346 [115 P.2d 455]: "No vested right to violate an ordinance may be acquired by continued violations."

In appellants' closing brief, the contention is also made that the ordinance upon which the city relies provides a penalty which is exclusive, and therefore the city has no right to injunctive relief.

In *City of San Mateo* v. *Hardy,* 64 Cal.App.2d 794, 797 [149 P.2d 307], an appeal by the city from a judgment denying an injunction to restrain defendant from violation of a municipal zoning ordinance and requiring him to remove certain alterations in the building which were made in violation of the ordinance, it was held:

"The right of the city to seek enforcement of the ordinance by this proceeding is not open to argument. (*City of Stockton* v. *Frisbie,* 93 Cal.App. 277, 289 [270 P. 270].)"

See, also, *Cooper* v. *Los Angles County,* 75 Cal.App.2d 75 [170 P.2d 49], which holds that the mere availability of other remedies does not preclude an action to enjoin a lessee from violating a zoning ordinance pending the outcome of a proceeding involving the validity of a variance.

On the other hand, *Metcalf* v. *County of Los Angeles,* 24 Cal.2d 267 [148 P.2d 645], is authority for the rule that an action to enjoin the enforcement of a zoning ordinance on the ground of its unconstitutionality as applied to plaintiff's property will not lie prior to the exhaustion of the procedure set forth therein whereby property may be excepted from its restrictions. This is true even though the granting or denial of the exception rests in the discretion of a local board, and the application for an exception is an admission of the constitutionality of the ordinance.

The record in this case clearly establishes the fact that zoning ordinance number 211 was in effect throughout the year 1926, and that this and succeeding ordinances have placed appellant's property in a single-family residence zone which is still in effect.

On September 14, 1948, appellants petitioned this court for permission to present evidence herein which "would show that the property never was constructed as a single-family dwelling unit, but as a three-family dwelling unit in the first instance, and that such construction was done with the knowledge and permission of the City of Santa Monica." Such petition must be denied for the reason that the proffered evidence is cumulative only. Appellant John F. Donovan directly testified that the original dwelling when completed was a three-family dwelling, and the court found that in

1926 (the year in which the house was constructed) ''plaintiffs converted the aforesaid single-family residence into three separate apartments.''

For the reasons stated the judgment appealed from is affirmed, and the petition to present further evidence is denied.

Doran, J., and White, J., concurred.

Appellants' petition for a hearing by the Supreme Court and application to introduce new evidence were denied January 6, 1949.