[Civ. No. 19731.   First Dist., Div. One.   Mar. 26, 1962.]

CITY AND COUNTY OF SAN FRANCISCO, Plaintiff and Respondent, v. STANLEY D. BURTON et al., Defendants and Appellants.

750

Bert W. Levit, David G. Bogert, Long & Levit and James E. Cooke for Defendants and Appellants.

Dion R. Holm, City Attorney, and Donald J. Garibaldi, Deputy City Attorney, for Plaintiff and Respondent.

BRAY, P. J.—In an action alleging violation of the city's zoning ordinance, defendants appeal from a judgment in favor of plaintiff.

## Questions Presented

1. Propriety of order sustaining demurrer to defendants' fifth defense.

2. Were defendants denied the equal protection of the law?

3. Alleged estoppel of city.

4. Propriety of the injunction:
   (a) as abating as a nuisance the present use;
   (b) indefiniteness as to what is to be removed.

## Record

In 1945 defendant Ruth Burton acquired the property in question and in 1946 deeded it to herself and her husband, Stanley D., as joint tenants. The area in which the property is located was zoned prior to 1923, and still is, as first residential (single-family dwelling). In 1923 a three-story single-family dwelling was erected upon the property, pursuant to a permit therefor. Some time thereafter and before defendants acquired the property, the building was converted into five apartment units. At all times during defendants' ownership the property had been and now is used and operated as an apartment house. At the time of acquiring the property defendants did not know that its use was in violation of the ordinance, and first learned that it was in 1948 when a citation was issued by the district attorney to defendants directing them to appear for a hearing. Defendants conferred with the then director of the planning commission, who informed them that he would assist them in applying for a rezoning of the property from first residential to second residential. Defendants applied for such rezoning but withdrew their application. Subsequently they filed an application to rezone the entire neighborhood. That application was denied. Defendants at all times continued to operate the building as an apartment house.

Mrs. Burton testified that on the assurance of the Director of Planning that the property would be rezoned, defendants made expenditures between $5,000 and $10,000 for furniture, furnishings, repairs and improvements; $5,000 for carpets alone. They have spent an average over a 10-year period of between $4,000 and $5,000 per year for decorative purposes, carpets, venetian blinds, stoves and refrigerators. They spent $3,000 to install fire escapes as a safety measure.

There is no claim of any disorderly conduct in the building. The tenants are the "finest people." Defendants value the

property at $125,000 and have received offers for it as high as $120,000.

There are several multifamily dwellings in the block, some being nonconforming ones (that is, were in existence prior to the adoption of the ordinance). The others have been converted since its adoption.

The senior planner testified that some of these properties had been referred in May, 1959, to the building inspection department, but that he knew of no injunctive action other than this one.

The court granted an injunction enjoining defendants from using the property in any manner other than as a single-family dwelling, and ordered all "illegal" alterations to be removed.

1. DEMURRER TO FIFTH DEFENSE PROPERLY SUSTAINED.

This defense alleged on information and belief that more than 50 per cent of the lots in the block are devoted to second residential use and that said block is in a so-called "marginal" area, and that "the action of plaintiff in zoning said block for first residential use is unreasonable, arbitrary, capricious, and discriminatory, and has no reasonably clear relationship to the promotion or protection of the public health, safety, order, morals, welfare or other proper object of the police power."

Do the facts (which must be assumed for purposes of demurrer) that more than 50 per cent of the lots in the block are devoted to second residential use and that the block is a marginal area constitute a defense in an action brought to abate the use as a violation of the ordinance? No.

A municipality can, through legislative function, exercise its police powers, and zone areas restricted solely to single-family dwellings. (*Miller* v. *Board of Public Works* (1925) 195 Cal. 477 [234 P. 381, 38 A.L.R. 1479].) The establishment of a boundary, which obviously must be drawn somewhere (*Reynolds* v. *Barrett* (1938) 12 Cal.2d 244, 249 [83 P.2d 29]), is a function of the city, not of the courts, and the wisdom of the city's decision is not subject to judicial review. (*Robinson* v. *City of Los Angeles* (1956) 146 Cal. App.2d 810, 816 [304 P.2d 814].)

The fact that defendants' property is on the edge of the district (assuming that this is what defendants mean by "marginal") does not render the zoning ordinance unreasonable or arbitrary as to that property (*Zahn* v. *Board of Public Works* (1927) 274 U.S. 325 [47 S.Ct. 594, 71 L.Ed.

1074], which affirmed *Zahn* v. *Board of Public Works* (1925) 195 Cal. 497 [234 P. 388]), nor does the use for other purposes than single-family dwellings of some property adjacent to defendants. (*Wilkins* v. *City of San Bernardino* (1946) 29 Cal.2d 332, 344 [175 P.2d 542] ; see also *Reynolds* v. *Barrett, supra,* 12 Cal.2d 246, 249.)

■ While it is arguable that facts which alone would not make a zoning ordinance unreasonable, when presented in combination might make the ordinance unreasonable (see dissent of Mr. Justice Carter in *Wilkins* v. *City of San Bernardino, supra,* 29 Cal.2d at pp. 348-349), it seems clear that the two facts asserted by defendants are merely concomitants, neither adding to the effect of the other.

■ "One attacking the unreasonableness of an ordinance must *plead its unreasonableness* and *aver facts* showing it to be unreasonable unless its unreasonableness appears on its face." (6 McQuillin, Municipal Corporations, § 22.17, p. 325; emphasis added; see also 5 McQuillin, Municipal Corporations, § 18.20, pp. 447-448.) There is no contention that the ordinance is unreasonable on its face.

McQuillin, Municipal Corporations, volume 8, section 25.282, pages 698-701, states: "It is repeatedly said by the courts that the reasonableness and validity of each zoning case must be determined upon its own facts and circumstances. Also, whether or not the bounds of discretion have been exceeded in zoning must be determined by the court upon the facts of the case. That is to say, the validity of zoning ordinances depends upon the circumstances of each case and the character of the ordinance or regulation. The general scheme or plan of zoning may be valid but when applied to a particular piece of property and a particular set of facts and circumstances it may be unreasonable and arbitrary. In short, the question is one of fact."

Defendants cite cases such as *Reynolds* v. *Barrett, supra,* 12 Cal.2d 244 (ordinance prohibiting the erection of a business structure on property entirely surrounded by properties used for business, semibusiness, and public purposes, with no other area in the city available for business purposes), which hold that an ordinance may be unreasonable as applied to a particular piece of property. (See also *Miller* v. *Board of Public Works, supra,* 195 Cal. 477 [revocation of a permit to erect a four-family flat building because the city contemplated enacting a zoning ordinance].) Also cited is *Morris* v. *City of Los Angeles* (1953) 116 Cal.App.2d 856 [254 P.2d 935],

declaring an ordinance limiting the minimum size of corner lots unreasonable as to the plaintiff's property, although in *Clemons* v. *City of Los Angeles* (1950) 36 Cal.2d 95 [222 P.2d 439], the same ordinance was sustained in its prohibiting bungalow courts to be sold in small separate ownerships. However, these cases in nowise change the rule that a complaint charging unreasonableness of a zoning ordinance must set forth facts and not conclusions.

The "fact" that defendants seem to rely on in their answer is their allegation above set forth that plaintiff's action in zoning the block was unreasonable, arbitrary, etc. They apparently believe that thereby they have alleged *as a fact* the matter set forth in that allegation. Such reasoning is, in the first instance, circuitous, and secondly, ignores the established rule of alleging facts to show the unreasonableness as set forth in the above discussion.

*Corporation of Presiding Bishop* v. *City of Porterville* (1949) 90 Cal.App.2d 656, 660 [203 P.2d 823], in regard to a very similar allegation, said: "The petition fails to state a cause of action in that the facts alleged do not show that the ordinance in question is unreasonable and void as applied to plaintiff. The allegations are:

" 'That said zoning ordinance as applied to your petitioner so as to prevent your petitioner from erecting a church on the above mentioned property, is unconstitutional and void, in that said ordinance is arbitrary and unreasonable and is without any substantial relation to the public health, safety, morals or general welfare; that said ordinance is not based upon a finding by the governing body of the city of Porterville that such zoning is necessary to the public health, safety, morals or general welfare of the community. That said ordinance . . . is not based on the general welfare of the community and does not tend to preserve or promote the public health, safety, or morals, and constitutes an arbitrary exclusion of a church, . . . That said ordinance . . . constitutes a deprivation of petitioner's property without due process of law. . . .'

"Matters of fact necessary to support the legal conclusions alleged are not stated, and the petition therefore states no cause of action. (*Wilkins* v. *City of San Bernardino, supra,* p. 344.)" (See also *Faulkner* v. *California Toll Bridge Authority* (1953) 40 Cal.2d 317, 329 [253 P.2d 659].)

The fifth defense did not state facts sufficient to constitute a defense and the demurrer thereto was properly sustained.

2. DEFENDANTS WERE NOT DENIED EQUAL PROTECTION OF THE LAWS.

Defendants claim that their constitutional rights were violated because no other action for injunctive relief has been commenced against other property owners in the area despite known infractions of the zoning ordinance.

In a similar case the Louisiana Supreme Court held that the showing of other unrestrained violations established a prima facie case of discrimination and that it became the burden of the city to explain its apparently discriminatory conduct. (*City of New Orleans* v. *Levy* (1957) 233 La. 844 [98 So.2d 210, 213].) But in *Wade* v. *City & County of San Francisco* (1947) 82 Cal.App.2d 337 [186 P.2d 181], the court pointed out "that mere lax enforcement of a law or ordinance violates no constitutional rights" (p. 339) and that, in effect, it is necessary in order to state a cause of action for such violation the complaint must allege, and there must be proved, an enforcement against the plaintiff which is intentionally discriminatory. The court said, referring to certain United States Supreme Court cases (p. 339) : "In each of those cases the distinction between mere laxity of enforcement and intentional or purposeful discrimination is recognized and it is held that while mere laxity of enforcement, although it may result in the unequal application of the law to those who are entitled to be treated alike, is not a denial of equal protection in the constitutional sense, it is otherwise in the case of deliberate or intentional discriminatory enforcement which is a denial of the equal protection guaranteed by the Constitution."

In our case, the defendants did not allege such intentional discrimination against defendants and the court found (a finding well supported by the evidence) that there was no discrimination against defendants shown. While there was no evidence of any other suit for injunctive relief having been brought, there was evidence showing investigation of other infractions in the area subsequent to the filing of this action. Enforcement of ordinances of this kind must start somewhere. Assuming the city had "permitted" others to violate the ordinance, mere inaction is not necessarily the result of an intentional or arbitrary scheme to discriminate against defendants. Without more the city may not be precluded from enforcing the ordinance against defendants. "Permitting some persons to violate a zoning regulation does not preclude its enforcement against others. (*Donovan* v. *City of*

*Santa Monica,* 88 Cal.App.2d 386, 396 [199 P.2d 51]. . . .)''
(*City of Los Angeles* v. *Gage* (1954) 127 Cal.App.2d 442,
452-453 [274 P.2d 34].)

3. ESTOPPEL.

Defendants urge that the granting of the injunction was improper because, say they, they were permitted to maintain and encouraged to maintain an apartment building, and in reliance thereon, they spent large sums of money in beautifying and improving the property. Defendants knew of the illegality, and even though the director of planning told them that the property or area would be rezoned, they knew that the final decision rested in the planning commission. They were not justified in expending moneys for apartment house uses until the commission should act. Certainly they were not justified in thereafter expending moneys for those purposes after the commission had denied their application.

It is true that ''laches and estoppel have been applied against municipalities in the California cases of'' *City of Los Angeles* v. *County of Los Angeles,* 9 Cal.2d 624 [72 P.2d 138, 113 A.L.R. 370]; *City of Los Angeles* v. *Cohn,* 101 Cal. 373 [35 P. 1002]; *Contra Costa Water Co.* v. *Breed,* 139 Cal. 432 [73 P. 189]; *County of Los Angeles* v. *Cline,* 185 Cal. 299 [197 P. 67]; *Times-Mirror Co.* v. *Superior Court,* 3 Cal.2d 309 [44 P.2d 547], as the defendants contend. But this is done only in rare and unusual circumstances. (*Donovan* v. *City of Santa Monica* (1948) 88 Cal.App.2d 386, 394 [199 P.2d 51].) The *Donovan* case distinguishes the cases cited by defendants on the ground that in each the municipality acted affirmatively, the party seeking· the estoppel acted in reliance thereon, and the city then attempted to alter its position. The evidence does not show sufficient acts by the city on which defendants reasonably might have relied.

4. THE INJUNCTION.

(a) *Abating the present use.*

Defendants contend that to abate or enjoin the present use of the property as an apartment house, plaintiff must show that a nuisance in fact existed, and as it was conceded that there was no contention of disorderly conduct in the use or occupancy of the building, plaintiff failed to show the existence of anything which would constitute·a nuisance per se.

However, defendants' basic premise is totally wrong. There is no need for the city to show that a nuisance

per se exists. In *City of San Mateo* v. *Hardy* (1944) 64 Cal. App.2d 794 [149 P.2d 307], the court after examining a zoning ordinance that neither specifically made the violation penal nor a public nuisance upheld the right of the city to enforce the ordinance by injunctive relief. There, as here, the dwelling was converted after the ordinance was enacted. The court said the right of the city to enforce the ordinance by this proceeding (injunction) was not open to question.

The principal case on this matter seems to be *City of Stockton* v. *Frisbie & Latta* (1928) 93 Cal.App. 277 [270 P. 270] (a funeral parlor in the midst of a residential district). Defendants claim the use enjoined there appears to have been a nuisance in fact. The court did discuss the question in terms of nuisance (and near-nuisance); however, the case clearly stands for the proposition that the violation of a valid zoning ordinance itself constitutes a sufficient showing to permit enforcement.

The evidence shows the property here to have been zoned continually first residential since 1921. Since at least 1945 it has been used as an apartment house, a clear violation of the zoning ordinance.

Defendants also relied on *Stegner* v. *Bahr & Ledoyen, Inc.* (1954) 126 Cal.App.2d 220 [272 P.2d 106]. The case is definitely not in point. The plaintiffs were private individuals who attempted to base their showing of *private nuisance* on the violation of an ordinance (penal in nature). ▆▆▆ The violation of a penal ordinance does not create a private nuisance per se. It was up to the plaintiffs to show an injury to them based on acts sufficient to constitute a nuisance.

(b) *Indefiniteness of the injunction.*

At oral argument plaintiff conceded that the judgment was too broad and indefinite, and stipulated that the following paragraph in the judgment should be deleted by the court: "It is further ORDERED, ADJUDGED AND DECREED that any and all illegal alterations, modifications and conditions be dismantled, discontinued and removed within a reasonable time, but in no event later that [*sic*] sixty (60) days after due notification of this order."

The paragraph above set forth is deleted from the judgment. In all other respects the judgment is affirmed. Each party shall bear its own costs.

Tobriner, J., and Sullivan, J., concurred.