[Civ. No. 4734. Fourth Dist. Nov. 23, 1953.]

COUNTY OF ORANGE, Respondent, v. MAX GOLDRING et al., Appellants.

Utt & Hubbard and Delbert L. Larsh for Appellants.

Joel E. Ogle, County Counsel, George F. Holden, Robert J. Switzer and Stephen K. Tamura, Deputy County Counsel, for Respondent.

GRIFFIN, J.—In 1946, defendants Max Goldring and wife purchased about 18 acres of land in Orange County in the Southwest Garden Grove area, and subsequently transferred title to it to defendant Garden Grove Farms, a corporation, of which Mr. Goldring was president and general manager. The area in dispute is the easterly 660 feet of the property, and constitutes slightly less than one-half of the 18-acre parcel. The westerly portion had been used for livestock feeding purposes

prior to 1946, and pens, sheds, feed-mill, house, barn and other structures had been constructed thereon. A school is located immediately to the north of the property and to the northwest and beyond are a number of residences. Before 1950, the easterly portion, being the acreage in question, was an open field with a fence around the perimeter, the fence having been constructed by a former owner in 1939. In 1946, a crop of barley was grown upon that area. Prior thereto tomatoes and barley had been seen growing there. Up until December 24, 1949, the disputed area was still an open field with scattered weed growth. After defendants acquired the property there had been no feeding of livestock on this 8 acres except that in the early part of 1946, approximately 35, 40, or 50 head of cattle were permitted in the area, for a week or 10 days, during which time they were fed hay. On several occasions one or two cows or calves were allowed to graze in this part of the range, and at times two or three horses were pastured there. There is some evidence that the cattle which were permitted to graze there were there only a few days at a time until they recovered from illness or fatigue following shipment, during which time they were fed whole hay.

In 1947, defendants Goldring, on behalf of the corporation, applied to the Orange County Planning Commission for a use variance permit, under a former county ordinance, to construct feeding pens in the disputed area. The application was reported on adversely by the planning commission and denied by the board of supervisors. Early in October, 1949, defendants constructed pens (1) and (2) on the westerly end of the disputed area and immediately placed and fed cattle in them. A resident in that area complained of the construction of pens (1) and (2) and a "stop work order" was posted on the premises by a deputy county building inspector in the latter part of October, 1949. On December 9, 1949, Ordinance No. 561 became effective, which included, in the R-4 suburban residential district, the disputed area, as well as other lands. This ordinance provided in part:

"The lawful use of land existing at the time this ordinance or amendments thereto take effect, although such use does not conform to the provisions hereof, may be continued, but if such non-conforming use is discontinued for a period of one (1) year any future use of said land shall be in conformity with the provisions of this ordinance.

"The lawful use of a building existing at the time this

ordinance or amendments thereto take effect may be continued, although such use does not conform with the provisions hereof, and such use may be extended throughout the building provided no structural alterations, except those required by law or ordinance or permitted under section 19 of this ordinance are made therein. If no structural alterations are made, a nonconforming use of a building may be changed to another conforming use of the same or more restricted classification.''

No further feeding pens were constructed in the area until May of 1950, when construction was resumed. Thereafter, despite the direction of the county building inspector to cease construction, defendants, on advice of their counsel, continued and completed the construction of feeding pens throughout the entire area. Each pen is equipped with a feeding trough and a watering trough built on permanent foundations, each pen having a capacity for feeding 75 to 100 cattle. After the effective date of the ordinance, 200 to 300 cattle and varying numbers in excess thereof, were placed and fed in the area in question. Cattle belonging to some 12 to 15 cattle buyers and brokers, including the defendant corporation, are kept and fattened on the ranch. The feed consists of a formula of ground hay, grain, and roughages mixed with concentrates and molasses for the purpose of fattening the cattle for the livestock market. The feeding capacity of the ranch was 1,200 cattle in 1947, and in 1952 was 3,600 cattle.

The trial court found generally in accordance with this statement of facts and concluded that the use of the real property involved, except as to the areas embraced in pens (1) and (2), for the operation or maintenance of a livestock feeding ranch for the feeding of cattle, constituted a public nuisance under the provisions of the county ordinance; that the defendants have a valid, nonconforming use to use the areas embraced in pens (1) and (2) for the maintenance and operation of a livestock feeding ranch for the feeding of cattle, and a nonconforming use to use the real property here involved, except as to pens (1) and (2), as a single unit, as a resting place for cattle, not to exceed 50 head at any one time and only for such period of time as shall be necessary for them to recover from travel fatigue or sickness following shipment, and rendered judgment accordingly, permanently enjoining defendants from operating or maintaining upon or using the real property involved, with the exceptions indicated.

On this appeal, defendants do not challenge the sufficiency of the evidence to support the findings. The claim is that the findings do not support the conclusions of law and judgment that followed.

Their contentions are that since the trial court determined that defendants had a valid nonconforming use to feed livestock in the disputed area, and since the 20 acres owned by defendants, including both the disputed and undisputed areas, had for many years prior to the effective date of the ordinance been operated and maintained as a single unit, the trial court was not authorized to limit the manner, method, or extent of defendants' exercise of its use, and that therefore defendants have a valid, nonconforming use to use the disputed property for the feeding of livestock without limitation, citing such cases as *De Felice* v. *Zoning Board of Appeals of Town of East Haven*, 130 Conn. 156 [32 A.2d 635, 147 A.L.R. 161]; *Building Comr. of Medford* v. *McGrath* (1942), 312 Mass. 461 [45 N.E.2d 265]; and *Appeal of Haller Baking Co.*, 295 Pa. 257 [145 A. 77].

Plaintiff relies principally upon the late cases of *County of San Diego* v. *McClurken*, 37 Cal.2d 683 [234 P.2d 972]; and *Edmonds* v. *County of Los Angeles*, 40 Cal.2d 642 [255 P.2d 772], as disposing of the issues here involved.

■ Photographs are in evidence indicating the nature of the 8 acres in question prior to the passage of the ordinance and its present condition as found by the trial court. It is quite apparent that there was a material change in the condition of the use by the construction of the feeding pens described, by the building of permanent foundations for watering troughs, and no doubt the number of cattle now confined in the limited quarters where cattle are being fattened for market by feeding the new formula, caused added noises, stench, and disagreeable odors, which disturb the near-by residents and school children. The facts found clearly demonstrate that the present use is such a formidable change and departure from the established use, both in magnitude and character, that it constitutes a wholly new and different use, and an unlawful enlargement or extension of a nonconforming use, and comes well within the principles established in the cases relied upon by plaintiff. ■ It was stated in those cases that it is the purpose of zoning to crystallize present uses and conditions and eliminate nonconforming uses as rapidly as is consistent with proper safeguards for those affected; that provisions for continuation of a nonconforming use are inserted

in zoning ordinances because of the injustice and doubtful constitutionality of compelling immediate discontinuance of the nonconforming use; and that our courts and courts throughout the country generally, have always strictly construed such provisions, citing *Rehfeld* v. *San Francisco*, 218 Cal. 83, 84 [21 P.2d 419] ; *City of Yuba City* v. *Cherniavsky*, 117 Cal.App. 568 [4 P.2d 299] ; *In re Botz* (1942), 236 Mo. App. 566 [159 S.W.2d 367].

In the Botz case, cited with approval in the McClurken case, an underlying distinction is noted. It is there stated that a building frequently represents a considerable investment, and if regard were not had for the reasonable protection of such investment, the ordinance might be held to be confiscatory with respect to its application to particular structures. The court there said:

"Not so, however, in the case of land, where the owner has made no investment in its improvement, and where, in most instances, he would be expected to suffer no hardship if compelled to conform to the strict letter of the zoning plan with respect to the use to which his land might be subjected.

"The underlying spirit of a comprehensive zoning plan necessarily implies the restriction, rather than the extension, of a nonconforming use of land, and therefore to whatever extent the particular act fails to make express provision to the contrary, a condition that the lawful nonconforming use of land existing at the time of the adoption of the ordinance may continue must be held to contemplate only a continuation of substantially the same use which existed at the time of the adoption of the ordinance, and not some other and different kind of nonconforming use which the owner of the land might subsequently find to be profitable or advantageous. . . ."

Here we are concerned with the use of land as distinguished from buildings, and in a district where schoolhouses and residences are gradually engulfing the surrounding territory.

In the McClurken case, *supra*, the trial court found that defendants had a nonconforming use to use a parcel of land for industrial purposes. In that nonconforming use the defendants utilized three fuel tanks having a capacity of 1,200 gallons, 2,300 gallons, and 6,000 gallons respectively. Subsequent to the adoption of the zoning ordinance, defendants in that action constructed four tanks with a capacity of 12,000 gallons each, permanently located upon concrete bases. It was there contended by them that the subsequent use was merely a continuation of the former nonconforming "indus-

trial use'' and that defendants made use of all the land owned by them as a unit for industrial purposes and it was therefore lawful. This court made an unsuccessful attempt to sustain the finding and judgment of the trial court in holding for defendants in that action (*[Cal.App.] 222 P.2d 688). The Supreme Court held otherwise and said:

''. . . Such a formidable expansion can hardly be viewed as a mere continuance of the nonconforming use consisting of the intermittent storage of lumber and scrap metal, ·preliminary grading, steel beam storage, or even the use of movable tanks 'all over the property, first one spot and then another' that may have occurred in the area in question. Even if the new tanks were used to supply power for the original industrial use, they would constitute an unwarranted enlargement of that nonconforming use.'' (Citing cases.)

The Edmonds case involved enlargement of plaintiff's trailer court to accommodate 30 more trailers. In disposing of the contentions there made the Supreme Court said:

''There is little difference in principle between enlarging a grocery business through relocation on a different part of the same property, as was the situation in the cited Yuba City case, and enlarging a trailer court business through the addition of trailer units for the housing of more people. In either situation the enlargement of the nonconforming business would involve a detrimental effect on surrounding property values in a residential area, as well as conflict with the purpose of zoning to restrict rather than extend the 'existing' nonconforming use. . . .'' (See, also, *Pisicchio* v. *Board of Appeals of Village of Freeport,* 165 Misc. 156 [300 N.Y.S. 368].)

The out-of-state authorities relied upon by defendants are distinguished in the Edmonds case, *supra,* or are inconsistent with the holding in that case.

Order affirmed.

Barnard, P. J., and Mussell, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied January 20, 1954. Carter, J., and Schauer, J., were of the opinion that the petition should be granted.

---

*A hearing was granted in the Supreme Court on Dec. 7, 1950. The final opinion of that court is reported in 37 Cal.2d 683 [234 P.2d 972].