[Civ. No. 7043. Fourth Dist. Jan. 29, 1963.]

CITY OF FONTANA et al., Plaintiffs and Appellants, v. GEORGE E. ATKINSON, JR., et al., Defendants and Respondents.

William A. Flory, City Attorney, for Plaintiffs and Appellants.

A. P. G. Steffes for Defendants and Respondents.

BROWN (R. M.), J.*—Appellants appeal from a judgment in favor of respondents after a court trial in which appellants sought to enjoin the unlawful extension or enlargement of nonconforming uses and the unlawful rebuilding of demolished nonconforming structures and the relocating thereof by respondents in violation of the City of Fontana zoning ordinance and Uniform Building Code.

The first cause of action seeks to restrict respondents to a certain part of land owned by respondent Atkinson from using or devoting to use any area or any portion of his land for the purpose of operating a dairy other than the specific area of his property which was being used for that purpose on January 2, 1953.

The second cause of action sought to enjoin respondents from keeping and maintaining any more cattle than were being kept and maintained thereon on January 2, 1953, which was 80 cattle.

The third cause of action sought to enjoin the reconstructing, rebuilding or relocating thereon of certain corral fences, stanchions or hay mangers without a building permit.

Respondents answered, alleging, in addition to a general denial, certain affirmative defenses consisting of statute of limitations, estoppel and waiver, laches, and that they were "required by law" to do all that they did.

After a court trial the court made its findings of fact that

---

*Assigned by Chairman of Judicial Council.

the first and second causes of action were barred by the statute of limitations, estoppel and waiver, and laches; and in connection with the third cause of action, that the appellants were barred by estoppel and waiver, and laches, and that the respondents were "required by law" to do everything that they did and concluded therefrom that (1) there was no violation of the original or present zoning ordinance or building code; (2) that respondents complied with all ordinance laws, regulations and legal requirements of appellants; (3) that everything done was "required by law" and they had received the required approval of the City Planning Commission; (4) that all actions prior to May 9, 1960, were barred by the statute of limitations; (5) that the respondents waived all causes of action and were barred by laches and estoppel; and (6) that the respondents were entitled to maintain, conduct and carry on a dairy business as to the first area, which was the part originally used by respondents and hereinafter called the "red area," and the extension of certain portions of that nonconforming use, hereinafter designated as the "blue area," and further that respondents could keep, feed, water and maintain thereon between 130 to 140 dairy cattle. Judgment was that (1) the appellants take nothing by their action; (2) respondents can maintain the dairy business as a nonconforming use; (3) respondents be allowed to continue the reconstruction of the fences, etc. and (4) respondents can use all the land (red and blue areas) to maintain not more than 140 dairy cattle.

## Statement of Facts

At the time of the adoption of the original zoning ordinance on January 2, 1953, the respondents, who own approximately 10 acres, maintained a dairy on the red area which was enclosed by certain fences and corrals on which there were kept approximately 80 cattle, plus buildings. In 1955 an additional area (blue area) was enclosed by certain fences and additional cattle were maintained thereon, so that there was a total of 130 to 140 cattle maintained on the red and blue areas.

In 1958 certain additional lands were enclosed by fences, herein called the "green area," but during the trial the respondents withdrew any claim that the area in green was a valid nonconforming use and that they did thereafter keep and maintain cattle thereon. Respondents had the property leased out but on May 9, 1960, the lease expired and they again operated the dairy.

Meanwhile, in May 1960, respondents filed an application

with the San Bernardino County Health Department for a permit to maintain and keep 200 cows, which application was denied.

Prior to the demolition of the fences, respondents were notified in writing by the county health department on June 27, 1960, of certain deficiencies existing on the property and an itemized list specifying the work needed to be done in order to correct or eliminate the deficiencies as a condition precedent to respondents' being permitted to maintain and operate the dairy. A copy was furnished to the planning commission director who thereafter caused to be mimeographed a list of deficiencies which, in general, referred to the corrals as having need of a complete cleanup of manure, certain grading and fillings to prevent runoff of dairy waste onto adjacent property, certain corral fences being rundown and in poor repair, and work needed to be done such as rebuilding and repairing corral fences, certain new cement floors to be constructed with adequate drains to the city sewer, and in general, a complete cleanup as to weeds, etc.

The respondents, meanwhile, had hired a dairy contractor who prepared detailed sketches which were submitted to the county health department and approved by them on July 28, 1960. On the same day the respondents submitted the sketches and plans to the director of the planning department who thereupon placed the following words and figures: ''Approved [signed] R. Garrod 7-28-60 City Planning Commission per telephone conversation with City Attorney 7-28-60 10 A.M.''

On June 2, 1960, the respondent Atkinson filed an application for a miscellaneous construction permit to repair dairy fences and certain items set forth on the mimeographed sheet, and thereupon, the City of Fontana, by Vernon B. Armstrong, Building Inspector, issued a building permit to do $4,500 worth of work to repair corrals and to recement certain walls and fix barn doors, to rebuild and repair corral fences and construct new cement floors with drain to city sewer, and to resurface certain concrete floors, replaster walls, fix doorjambs, fix storage area, repair a door, and repair floor in cold storage box.

Respondents then proceeded to take down this fence and on August 22, 1960, Mr. Armstrong issued a ''stop'' order claiming that no proper permit had been secured and to stop any further work being done on the fences, stanchions and feed mangers being built to replace those torn down.

On August 17 the City of Fontana, by Mr. Armstrong, had

a letter written to respondent Atkinson advising him officially that the corrals were being demolished without a permit and that no permit could be issued under "paragraph 2084" [2840] of the Fontana zoning ordinance.

On August 25 respondent Atkinson applied for a building permit to build a 6-foot solid type wood fence, which was denied by Mr. Armstrong pending the outcome of the present proceedings. Another application dated August 26 was filed by respondent to rebuild and regrade and repair corrals, as required by the San Bernardino County Health Department. This was on the same day also denied.

Paragraph 2840 of Ordinance No. 94 provides that no officials or public employees can issue any permits or licenses not conforming with the ordinance and, if done, would be void.

Appellants contend that respondents did not obtain a permit or approval of the planning commission, while respondents refer to the approval by the planning commission as well as paragraph 36 of the Findings of Fact, which paragraph states that the respondents ". . . had obtained all necessary permits and permission from plaintiffs [appellants] and had obtained the necessary approval of the Fontana City Planning Commission for the work which they had already done and which they intended and were proceeding to do. . ."

As to the third cause of action, appellants claim that in August 1960, without a permit from the building department respondents demolished all the corral fences in preparing to rebuild new ones, moved or prepared to move certain stanchions or mangers, and regraded the area and constructed certain cement floors in the corrals.

It is appellants' general position that unless respondents' affirmative defenses are good, judgment should have been granted in favor of appellants, restraining respondents from using for corral purposes any portion of the land other than the red area which existed at the time when the nonconforming use was established, and that no additional cattle in excess of 80 head can be kept on the red area, nor can any cattle be kept on the blue area.

It is obvious and fairly well conceded that defendants' land, described and marked in red on exhibit one in evidence, was enclosed by cattle fences or cattle corrals, and the area enclosed thereby was used for the keeping and maintaining of 80 head of cattle therein, and the uses and the fences therefor, on January 2, 1953, the date of the city's

original zoning ordinance (No. 94), were valid nonconforming uses. Under the ordinance, a nonconforming use is: "A use of . . . land existing at the time of the adoption of this ordinance or any amendment to it which does not conform to the use regulations for the district in which it is located."

Sections 2100 and 2110 of the ordinance provide for the continuation of the lawful existing use at the original time; that no nonconforming use may be enlarged or increased without the approval of the planning commission to occupy a greater area nor shall any nonconforming use be moved to any other portion of the area; and no nonconforming use shall be moved, altered or enlarged unless "required by law" and it shall not be altered, extended or restored so as to displace any conforming use. It further provides that:

"Any . . . use which was lawfully existing . . . at the time this ordinance was adopted and which becomes a nonconforming . . . use as a result of the adoption of this ordinance may be continued subject to the provisions of this Article."

It stated that nothing in that section should be interpreted as authority for or approval of the continuance of the use of a structure or premises in violation of zoning regulations in effect at the time of the effective date of the ordinance or any amendment thereto.

It is obvious from a reading of the above stated provisions of the city's zoning ordinance that extensions or enlargements of nonconforming uses are not otherwise authorized. Under the authorities, certain extensions or enlargements of existing nonconforming uses have been forbidden: (a) increasing the number of cattle being fed and the construction of permanent feeding pens (*County of Orange* v. *Goldring*, 121 Cal.App.2d 442 [263 P.2d 321]); (b) enlargement of trailer court to accommodate 30 more trailers (*Edmonds* v. *County of Los Angeles*, 40 Cal.2d 642 [255 P.2d 772]); (c) increase of three fuel tanks having capacity of 1,200 gallons, 2,300 gallons and 6,000 gallons respectively, to four tanks with a capacity of 12,000 gallons each (*County of San Diego* v. *McClurken*, 37 Cal.2d 683 [234 P.2d 972]); (d) the drilling of new wells or the redrilling of old wells to depths beyond the present level (*Beverly Oil Co.* v. *City of Los Angeles*, 40 Cal.2d 552 [254 P.2d 865]); and such other cases as set forth in *National Lumber Products Co.* v. *Ponzio*, 133 N.J.L. 95 [42 A.2d 753]. See also volume 101, Corpus Juris Secundum, Zoning, section 192, page 953. It is clear, therefore, that the city may legally prohibit defendants from enlarging or extending the

use of the red area which was being used at the time of the adoption of the original zoning ordinance and further prohibit them from increasing the herd to a greater number than that which was then being maintained thereon.

The property was subsequently leased by the owner Atkinson to his lessee for a period ending May 9, 1960, and during this period of time said lessee, about August 1955, increased the number of cattle maintained on the property from 80 to from 130 to 140, and added additional corrals, fences and stanchions to accommodate the increased use of the leased property designated as the blue area on exhibit one. This was done under some claim of acquiescence, knowledge and permission of certain officials, to which no objection was made by them until May 9, 1960, when the lease terminated.

The trial court found that these changes were made pursuant to orders of the Health Department of the County of San Bernardino and with knowledge and approval of the city officials of Fontana; that during this period, said lessee was issued a license from the city and the county health department, and no claim was made during that time that said lessee was violating any ordinance; that by agreement of the owner and lessees, it was provided that such cattle as were on the premises at the end of the lease period would be removed and the property returned to the owner as thus improved.

Apparently, it was not until the owner, Atkinson, proceeded to take over the property, as thus improved, that the county health department was notified by him that he, Atkinson, intended to take over and operate the dairy again under the present improvements and maintain about 200 cows therein. Atkinson was then visited by a county health department agent and certain listed deficiencies were noted as of May 2, 1960, such as: complete cleanup of manure in all corrals, change of grade to prevent runoff, repair and "rebuild" certain corral fences, new cement floor with adequate drain to city sewer, with the admonition that no license would otherwise be issued to them.

It appears that in response thereto Atkinson employed a dairy contractor who prepared a detailed schedule and plot plan of the work to be done in the red, blue and green areas, and that this plan was submitted to the county health department and approved on July 28, 1960. On that day, Atkinson submitted said detailed sketch and plan to the Director of the Planning Department of the City of Fontana and it carried a

stamp of approval by said city planning commission "per telephone conversation with City Attorney."

Exhibit seven shows that on June 2, 1960, Atkinson made an application to the city building inspector for permission to repair and "rebuild" dairy corral fences and slope holding pens to a drain, etc., as listed on an attached sheet. A permit dated June 2, 1960, was issued by the building inspector as of that date to Atkinson and delivered to him, and a permit fee of $18 was charged for $4,500 in improvements to be made.

Atkinson then commenced rebuilding and relocating all corral fences, to scrape and bring the corrals up to the requirements, and to relocate the fences accordingly. Before the fences were replaced to any extent, the director of the department of building inspection, on August 22, 1960, posted a "stop order" on the property and allowed no further work or restoration of the fences on any of the property, under the theory that Atkinson had not obtained a permit for certain contemplated improvements, under section 301(a) of the 1958 Uniform Building Code. This was followed by a letter from the building inspector notifying him that since the corral fences had been torn down (particularly applicable to the red area or the original conforming use), no permit could be issued under the zoning ordinance No. 2110, which provides in part:

"C. Ordinary non-structural repairs, alterations or maintenance of a non-conforming structure shall not be deemed an extension of such non-conforming structure and shall be permitted. Alterations or repairs of a structural nature to a non-conforming building or structure shall not be permitted except as approved by the Planning Commission.

". . . . . . . . . . . . . .

"D. Except as may otherwise be provided in this section, any non-conforming structure, the use of which is non-conforming, may not be moved, altered or enlarged unless required by law."

The court specifically found that all the requirements relating to the elimination or correction of said deficiencies and the work needed, as specified by the county health department and the Fontana City Planning Commission were reasonable and proper, and all the work needed in complying with said requirements was "required by law." In addition, it found generally that the city was estopped to question the right of Atkinson to maintain his improvements on his property in the manner in which it was being operated under his lease and to

maintain it, because the city's officials knew of the improvements made and consented thereto over a five-year period and that the four-year statute of limitations applied to the city in this respect because it took no action within that time to correct the additional nonconforming uses being made of the property.

We conclude that Atkinson was entitled to keep the number of cattle and maintain his property according to the nonconforming use originally allowed, i.e., by means of the corrals then built upon the property (red area, exhibit one), and should be allowed to repair and "rebuild" them to conform to regulations of the county health department, with the limited number of cattle originally contained therein. The fact that these corral fences were temporarily removed for the purpose of grading the corrals to slope for a proper drainage at the demand of the health department before a permit to operate would issue and which was authorized by the city planning commission, should not operate as a voluntary act of Atkinson forfeiting his original nonconforming use of the property. Any such action on the part of the city would be unreasonable and equity should not tolerate it. The case of *Woodie* v. *Byram,* 132 Cal.App.2d 651, 654 [282 P.2d 920], is applicable, and it was there said, citing *Farrell* v. *County of Placer,* 23 Cal.2d 624, 627 [145 P.2d 570, 153 A.L.R. 323]:

" 'It has been said generally that a governmental agency may not be estopped by the conduct of its officers or employees . . . but there are many instances in which an equitable estoppel in fact will run against the government where justice and right require it. . . . It has been aptly said: "If we say with Mr. Justice Holmes, 'Men must turn square corners when they deal with the Government,' it is hard to see why the government should not be held to a like standard of rectangular rectitude when dealing with its citizens." ' " See also Code of Civil Procedure, section 1962, subdivision 3; and *United States Fid. & Guar. Co.* v. *State Board of Equalization,* 47 Cal.2d 384, 388 [303 P.2d 1034], and cases cited.

The question of estoppel of the city to question the right of Atkinson and his lessee to enlarge, expand or extend the original nonconforming use does not appear to be applicable. Ordinance No. 2110 provides that no nonconforming use shall be altered, extended or restored so as to displace any conforming use. (*County of Orange* v. *Goldring, supra,* 121 Cal. App.2d 442.) In *Western Surgical Supply Co.* v. *Affleck,* 110 Cal.App.2d 388 [242 P.2d 929], it was held that a board

or official has no power to waive or consent to violation of penal provisions in the Health and Safety Code and the Business and Professions Code. See also volume 51, California Jurisprudence, Second Edition, Waiver, section 5, page 313, note 19; *Caminetti* v. *State Mut. Life Ins. Co.*, 52 Cal.App.2d 321 [126 P.2d 165]; *Magruder* v. *City of Redwood*, 203 Cal. 665 [265 P. 806]; *Lima* v. *Woodruff*, 107 Cal.App. 285 [290 P. 480]; and *County of San Diego* v. *California Water etc. Co.*, 30 Cal.2d 817 [186 P.2d 124, 175 A.L.R. 747], where it was held that neither the doctrine of estoppel nor any other equitable principle may be invoked against a governmental body where it would operate to defeat the effective operation of a policy adopted to protect the public. See also volume 1, American Law Reports, Second Edition, Estoppel—Governmental Bodies, sections 2 and 3, pages 340-341, and cases cited therein.

It therefore must be held that the City of Fontana was not estopped and that it did not waive the provisions of the ordinance in reference to enlarging the use and adding additional cattle, as well as installing the additional improvements to the land indicated in the blue area on exhibit one.

The remaining question is whether the city was precluded from bringing this action to enjoin violations of the zoning ordinance and building code by reason of the four-year statute of limitations. ▮▮▮▮ ''An action for relief not hereinbefore provided for must be commenced within four years after the cause of action shall have accrued.'' (Code Civ. Proc., § 343.) That section is applicable, in a proper case, against a city or a county. (*City of Fullerton* v. *County of Orange*, 140 Cal.App. 464 [35 P.2d 397].) However, in the instant case, the time starts to run from the date of the accrual of the cause of action.

Section 2810 of the ordinance involved provides a penalty of fine and imprisonment for violation of any of its provisions and also provides that such a violator shall be deemed guilty for each day during any portion of which any violation is committed or permitted, and the city attorney shall institute any reasonable proceedings to enforce the provisions of the ordinance or institute an action to restrain such violations.

▮▮▮▮ It is clear that a city may enjoin a violation or threatened violation of its zoning ordinances. (*Donovan* v. *City of Santa Monica*, 88 Cal.App.2d 386 [199 P.2d 51]); *City of San Mateo* v. *Hardy*, 64 Cal.App.2d 794 [149 P.2d 307]; 8 McQuillin, Municipal Corporations, (3rd ed. rev.) § 25.255,

pp. 617, 620.) ▮ No vested right to violate a city ordinance may be acquired by continued violations. ▮ The mere fact that, without more, city officials fail to enforce a zoning ordinance against a violator will not estop the city from subsequently enforcing it against him. (*Donovan* v. *City of Santa Monica, supra,* 88 Cal.App.2d 386; *Acker* v. *Baldwin,* 18 Cal.2d 341 [115 P.2d 455]; *City of San Mateo* v. *Hardy, supra,* 64 Cal.App.2d 794.)

▮ Since the violation charged was a continuing violation, the statute of limitations does not run. (*Strong* v. *Sullivan,* 180 Cal. 331 [181 P. 59, 4 A.L.R. 343]; *Eskridge* v. *City of Sandusky,* 73 Ohio L. Abs. 568 [136 N.E.2d 465]; *Kilko* v. *City of Cleveland,* 60 Ohio L. Abs. 561 [102 N.E.2d 476] (14 years' use in violation of ordinance); *People* v. *Stanley,* 33 Cal.App. 624 [166 P. 596]; *People* v. *Curry,* 69 Cal.App. 501 [231 P. 358]; *Lockard* v. *City of Los Angeles,* 33 Cal.2d 453, 466 [202 P.2d 38, 7 A.L.R.2d 990]; *Acker* v. *Baldwin, supra,* 18 Cal.2d 341.)

Judgment reversed, with instructions to the trial court to make new findings and enter judgment not inconsistent with the conclusions here reached.

Griffin, P. J., and Coughlin, J., concurred.

A petition for a rehearing was denied February 25, 1963, and respondents' petition for a hearing by the Supreme Court was denied March 27, 1963.