STATE OF VERMONT

ENVIRONMENTAL COURT

|  |  |  |
|---|---|---|
| City of St. Albans, | } | |
| Plaintiff, | } | |
| | } | |
| v. | } | Docket No. 126-7-04 Vtec |
| | } | |
| Alan Hayford and Beverly Hayford, and | } | |
| Gregory P. Benoit and Deborah Kane, | } | |
| Defendants. | } | |
| | } | |

Decision and Order

The City of St. Albans filed this enforcement action[1] on July 16, 2004, under 24 V.S.A. §4470(c) (codified as amended at §4470(b)) , against Alan and Beverly Hayford, the former owners of property located at 53 High Street in the City of St. Albans, and against Gregory P. Benoit and Deborah Kane, the present owners[2] of the property. The City is represented by Robert E. Farrar, Esq., and Defendants Hayford, Benoit and Kane are represented by Michael S. Gawne, Esq.

The two enforcement actions were placed in inactive status in this Court, by agreement of the parties, while the zoning history and compliance status of the property

---

[1]  An earlier-filed enforcement case, originally filed in Franklin Superior Court on June 16, 2003 under the caption of Garceau v. Hayford, Docket No. S273-03 Fc, and transferred to Environmental Court as City of St. Albans v. Hayford and Benoit and Kane, Docket No. 161-9-03 Vtec, was dismissed by stipulation of the parties, as "redundant to the pending matter" with the understanding that its claims for injunctive relief and monetary penalties under 24 V.S.A.  §§ 4444 and 4445 (codified as amended at 24 V.S.A. §§4451 and 4452) would continue to be litigated in this remaining enforcement case.

[2]  The complaint had also cited as defendants the tenants occupying the property as of the date the action was filed; the complaint has since been withdrawn as to them.

1

was litigated in other pending cases.[3]  After those cases were concluded, an evidentiary hearing was scheduled in this remaining enforcement case.  At the hearing, the parties informed the Court that no facts were in dispute and that the evidentiary hearing would not be required.  Instead, they filed a stipulated statement of facts, and requested Judge Wright to take a site visit with the parties.  After the site visit, the parties were given the opportunity to submit written requests for findings and memoranda of law.  Upon consideration of the agreed statement of facts and evidence as illustrated by the site visit, and of the written memoranda and requests for findings filed by the parties, the Court finds and concludes as follows.

The history of the property as established in the other decisions is reiterated here only as necessary to determine when any violations on the property commenced or ceased.  See, generally, In re: Appeal of Benoit & Kane, Docket No. 148-8-04 Vtec (Vt. Envtl. Ct., December 15, 2005);  City of St. Albans v. Hayford, et al., Docket No. 161-9-03 Vtec (Vt. Envtl. Ct., June 1, 2004).

This enforcement action involves property at 53 High Street in the High Density Residential zoning district, served by municipal water and sewage disposal services.  The property is 20,900 square feet in area. The property contains two buildings (the "main building" and the "rear building"), both of which were built in their present locations before the adoption of zoning in the City.  The rear building is located approximately four[4]

---

[3] See In re: Appeal of Hayford, Docket No. 154-9-01 Vtec (Vt. Envtl. Ct., Mar. 6, 2003); City of St. Albans v. Hayford, Benoit and Kane, Docket No. 161-9-03 Vtec (Vt. Envtl. Ct., June 1, 2004) (originally Garceau v. Hayford, et al., Docket No. S273-03 Fc); In re: Appeal of Benoit and Kane, Docket No. 148-8-04 Vtec (Vt. Envtl. Ct., Dec. 15, 2005).

[4] These measurements are as found in the December 15, 2005 decision.  The parties' stipulation filed in Court on May 16, 2006, referred to the rear building as "located in very close proximity, within a couple feet, to the southerly and rear boundary lines."

2

feet from the east or rear property line and approximately two feet from the south side property line. The main building is located twenty-four feet from the front property line, thirteen feet from the north side property line, and eighty-nine feet from the rear property line.

The former owners, Defendants Hayford, purchased the property in mid-1976, prior to the adoption of the first zoning ordinance for the City in March of 1977. It was transferred to the present owners, Defendants Benoit and Kane, on the last day of June, 2003.

When the Hayfords acquired the property in 1976, the rear building was in use as a print shop, and the main building was in use as a multi-family dwelling containing four dwelling units (apartments). In 1976, the Hayfords were granted a building permit to convert the rear building to a nursery school. As of that time, the property contained seventeen parking spaces, and had a lot coverage of approximately 20%, as lot coverage was then defined (to include only the footprint of the buildings and structures).

As of the adoption of the first zoning ordinance in March 1977, the property was non-conforming in three respects: the side and the rear setbacks of the rear building were smaller than required under the zoning ordinance, and the ordinance prohibited more than one principal building on a lot. The property met the requirements of the ordinance as to lot width, minimum lot size, and lot coverage, and the four residential units in the main building met the requirement of three thousand square feet of lot area for each unit.

The Zoning Regulations allowed any non-conforming buildings or uses to continue indefinitely, but not to be expanded or to increase a building's degree of non-compliance. Under the Zoning Regulations, a non-conforming use could be changed to another use with ZBA approval if the proposed use were "of the same or of a more restricted nature." §602.2. The Zoning Regulations required a zoning permit to be obtained from the Zoning Administrator for any permitted uses. §205. The Zoning Regulations required site plan approval to be obtained from the Planning Commission for any uses other than single-

family or two-family residences. §401.

At some time in mid-1986, the Hayfords converted the interior space of the main building from four dwelling units to five dwelling units. This change in the number of units did not render the property more non-conforming, assuming that multi-family use continued to be a permitted use in the district, as it still met the requirement of three thousand square feet of lot area per dwelling unit and still had an adequate number of parking spaces.

By early 1987, Defendants Hayford moved the nursery school that was operating in the rear building to another location, and renovated the rear building as an additional dwelling unit. They began to rent it out some time in the spring of 1987. The decision in Appeal of Hayford, Docket No. 154-9-01 Vtec (Vt. Envtl. Ct., Mar. 6, 2003) determined that, whatever discussion may have occurred between the Hayfords and the Zoning Administrator about the conversion to a rental unit, the City was not estopped from proceeding with enforcement regarding the residential unit in the rear building. This 1987 conversion without first obtaining a zoning permit and without first obtaining site plan approval was a violation of the Zoning Regulations.

However, other than the failure to obtain site plan approval and a zoning permit for the conversion, the 1987 increase in the number of dwelling units on the property did not render the property more non-conforming, assuming the applicable zoning regulations allowed multi-family use as a permitted use in the district, as the property still met the requirement of three thousand square feet of lot area per dwelling unit, and still met the requirements for two parking spaces per unit. In fact, it may have made the property less non-conforming, if the use of the rear building for a residential unit made the rear building an accessory structure to the multi-family residential use of the main building, as at that time the rear and side setbacks for an accessory structure were less than those required for a principal structure. That is, conversion of the rear building to an accessory structure made the side setback conforming and made the rear setback less non-conforming.

4

Thus, the conversion of the rear building to a residential unit in early 1987 did not violate any order of the then-ZBA, and did not violate the zoning regulations except for Defendant Hayfords' failure to obtain a zoning permit or site plan approval for the conversion. That is, maintenance of six residential units on the property, including one in an accessory building, was a conforming use that also met the dimensional and density requirements of the 1987 Zoning Regulations, except for the grandfathered non-conforming setback of the rear building.

In 1993, after a fire damaged one of the five apartments in the main building, Defendant Hayfords obtained a zoning permit to repair it. That zoning permit recognized that the property was allowed to continue being used with five dwelling units in the main building. On that basis, a notice of violation citing the fifth rental unit in the main building as a zoning violation was overturned in Appeal of Hayford, Docket No. 154-9-01 Vtec (Vt. Envtl. Ct., Mar. 6, 2003).

Thus, the status of the property just before the changes to the Zoning Regulations in 1998 was as follows. The only dimensional nonconformity was the non-conforming rear setback of the rear building, treated as an accessory building, which remained grandfathered, that is, allowed to continue as a preexisting nonconformity. As to the use of the property, having five residential units on the property or in the main building was not a violation and was allowed to continue. The use of the rear building as a residential unit was not a use violation, in that multi-family residential use was a permitted use in the district. Its early 1987 conversion for that residential use, however, was a violation of the Zoning Regulations for failure to obtain site plan approval and for failure to obtain a zoning permit. The sixth unit did not become a density violation until the 1998 amendments to the regulations.

The 1998 Land Development Regulations increased the minimum lot area to five thousand square feet per unit for a multi-family dwelling, increased the minimum side setback for buildings other than single-family dwellings to fifteen feet, set a minimum side

5

setback of five feet for an accessory structure, and increased the minimum rear setback to five feet for an accessory structure. §304. In the High Density Residential zoning district, multi-family dwellings became conditional uses, so that approval of any changes would be subject to the conditional use standards in §502.

Thus, after the adoption of the 1998 Regulations, the property had the following dimensional nonconformities, all of which were allowed to continue as having been grandfathered, and therefore were not violations. The rear building, if used as an accessory building, became more non-conforming in 1998 as to the rear setback and became non-conforming as to the side setback even if treated as an accessory building. The main building became non-conforming on its north side as to the new fifteen-foot side setback requirement.

Section 304 of the 1998 Regulations also increased the maximum lot coverage to 50%, and added detailed requirements for off-street parking and landscaping. §§415 & 416. The parties do not now argue that the property became non-conforming (or, if so, was grandfathered) as to lot coverage,[5] as to the location or number[6] of off-street parking spaces, or as to the associated landscaping requirements, even though Defendants Hayford did apply for and were denied a variance from those requirements.

Similarly, as of the adoption of the 1998 Regulations, the property had the following use nonconformities, all but one of which were allowed to continue as having been grandfathered, and therefore were not violations. With regard to the property's use as a

---

[5] Lot coverage is defined in the 1998 Regulations to include land covered by buildings and structures, parking spaces, and driveways, compared to its definition in the 1977 Regulations as the land covered by "the building area."

[6] Required parking is calculated as two parking spaces per dwelling unit plus one guest space for every three dwelling units, so that nine (or ten) spaces would be required for four dwelling units, eleven (or twelve) for five dwelling units, and fourteen for six dwelling units. §415.7. The parties agree that the property has seventeen parking spaces.

6

multiple-family dwelling, it became nonconforming as not holding conditional use approval, but was allowed to continue in a grandfathered status until or unless additional alterations would be proposed. With regard to the six dwelling units on the property, it became non-conforming as to any more than four dwelling units, due to the increased area-per-dwelling-unit requirement. However, it was grandfathered as to five dwelling units, based on the 1993 zoning permit. The sixth unit, however, was not grandfathered, as it had not received either a zoning permit or site plan approval when it was converted in 1987, and its use as a dwelling unit also became a violation due to the insufficient area per dwelling unit.

In 1998, Defendants Hayford applied for a Certificate of Occupancy, which was denied by the Zoning Administrator because the property did not meet the 1998 Zoning Regulations. The Hayfords did not appeal the Zoning Administrator's decision, but, instead, applied to the Zoning Board of Adjustment for approval to convert the property from four dwelling units to six dwelling units. The ZBA denied the application, ruling that the property required five variances, and also denied variances for those items: regarding the lot area, §304(D); the sideline setbacks, §304(D); the rear setback (referring to the rear building as a principal building), §304(D); landscaping around the perimeter of a parking lot, §415.4(B); and parking within the required setbacks, §417.4. That decision was not appealed and became final.

The City issued a notice of violation and filed an enforcement action against Defendants Hayford in 1999 regarding the use of the property for six dwelling units, claiming that only four had been approved. The enforcement action was eventually concluded in favor of Defendants Hayford because of the invalidity of the underlying notice of violation. Garceau v. Hayford, Docket No. S98-99 Fc (Franklin Super. Ct., May 29, 2001).

The Zoning Administrator issued a new notice of violation on July 11, 2001, again stating as the violation "use of this property for six dwelling units" although "[t]he

7

property is approved for only four dwelling units." The notice of violation directed the Hayfords to "cease and discontinue the use of two of the dwelling units." Defendants Hayford applied for a variance to use the rear building as a dwelling unit, in connection with which they proposed to eliminate one of the five dwelling units in the main building, which would have resulted in a total of five dwelling units for the property, to meet the area-per-dwelling-unit limitation. In the Hayfords' appeal to Environmental Court, Judge Meaker denied the variance on the basis that a variance had already been denied in 1998 and had become final without appeal, overturned the notice of violation as to the residential use of the fifth apartment in the main building (based on the 1993 permit authorizing repair of one of those units), and sustained the notice of violation regarding the residential unit in the rear building. In re: Appeal of Hayford, Docket No. 154-9-01 Vtec (Vt. Envtl. Ct., Mar. 6, 2003). No party appealed that decision, and it became final.

Defendants Hayford continued to rent out the rear building as a dwelling unit after the 2001 Notice of Violation, through the date of the 2003 Environmental Court decision upholding the notice of violation, and until their transfer of the property to Appellants on June 30, 2003. The parties stipulated that the Hayfords received $760.00 in rental income from the sixth residential unit in the rear building for the month of June of 2003.

After summary judgment was entered in the 2003 enforcement action, City of St. Albans v. Hayford, Benoit and Kane, Docket No. 161-9-03 Vtec (Vt. Envtl. Ct., June 1, 2004), Defendants Benoit and Kane applied under Article 6 of the Land Development Regulations for the after-the-fact conversion of the rear building from its former non-conforming daycare use to use as a residential dwelling unit. The enforcement cases remained in inactive status by agreement of the parties, as the outcome of that application could have affected whether injunctive relief would be appropriate. Because Defendants did not propose to modify the existing parking or landscaping configuration of the property, site plan review was not required. §701(B)(1).

In its December 2005 decision on Defendants' appeal of the DRB's denial of their

8

application, the Court applied §602(D) of the Land Development Regulations. Section 602(D) allows a non-conforming use to be altered or extended "if such alteration or extension does not result in additional dwelling units or the addition of other non-conforming uses." The Court ruled that the rear building could not be approved as a sixth dwelling unit, if the main building were to be maintained as five dwelling units, as it would result in one additional dwelling unit. In re: Appeal of Benoit and Kane, Docket No. 148-8-04 Vtec (Vt. Envtl. Ct., Dec. 15, 2005).

The parties stipulated that from July 1, 2003 through April 30, 2006, when Defendants Benoit and Kane took ownership of the property, they received $14,300 in gross rental[7] income from the sixth unit, that is, the unit in the rear building. This averages to $420.59 gross rental per month over the 34 month period ( presumably counting for periods of vacancy), or roughly $13.83 a day. The parties stipulated that the Town's costs of enforcement were $4,500.

As this Court discussed thoroughly in its decision in City of Burlington v. Richardson, Docket No. 188-10-03 Vtec (Vt. Envtl. Ct., June 27, 2006), Vermont's zoning enabling statute now contains two separate zoning enforcement mechanisms, with differing characteristics, which must be understood before analyzing the statute of limitations applicable in the field of zoning enforcement.

The older zoning enforcement scheme, which was contained in the statute well before the Environmental Court had jurisdiction over zoning matters, allows enforcement

---

[7] The parties also stipulated that the net rent attributable to that unit over that time period was $3,171, calculated as one-sixth of the total gross rents for the whole property (all six apartments), minus the total expenses for the whole property (including depreciation). The Court does not find the net rent to be a useful consideration calculated in that way, as the use of the sixth apartment was not legal. That is, absent the illegal use of the sixth apartment, Defendants would have had a gross income from only the five legal apartments, with which to pay the expenses for the property as a whole.

actions to be brought to enforce violations of the zoning ordinance itself, without any prior order of the ZBA or DRB. It provides for the imposition of monetary penalties, 24 V.S.A. former §4444 (codified as amended at 24 V.S.A. §4451), and provides for injunctive relief. 24 V.S.A. former §4445 (codified as amended at 24 V.S.A. §4452). Enforcement actions under these sections may be brought only by the municipality.

The imposition of fines under §4451 requires a prior notice of violation and the opportunity to cure. Failure to appeal such a notice of violation means that the existence of the violations cannot be contested in a later enforcement proceeding. Town of Charlotte v. Richmond, 158 Vt. 354, 356-57 (1992); see also In re Appeal of Smith, 2006 VT 33, ¶5. In an enforcement case, however, the defendant is free to present evidence as to the circumstances of the violation, including whether the violation has been or is capable of being cured, as such evidence is pertinent to the appropriateness of any proposed monetary penalty or injunctive remedy.

Contrasted with the enforcement scheme in §§4451 and 4452, the newer zoning enforcement provision was added to the zoning enabling statute in 1995, in the same statute that transferred zoning appeals to Environmental Court and gave the Environmental Court concurrent jurisdiction over the older type (§§4451 and 4452) of zoning enforcement case. 24 V.S.A. former §4470(c) (codified as amended at 24 V.S.A. §4470(b)). Section 4470(b) requires municipalities to enforce all decisions of a municipal board of adjustment, development review board, or planning commission, and allows interested persons as well as municipalities to bring such enforcement actions. It does not provide for monetary fines, and does not by its terms require a prior notice of violation. It does not apply to direct enforcement of a zoning ordinance violation, nor does it apply to violations of zoning permits or certificates of occupancy issued by a zoning administrator.

In response to the Vermont Supreme Court's decision in Bianchi v. Lorenz, 166 Vt. 555 (1997), 24 V.S.A. former §4496(a) (codified as amended at 24 V.S.A. §4454(a)) was

10

adopted in 1998. It provides a fifteen-year statute of limitations "from the date the alleged violation first occurred and not thereafter," within which to institute enforcement proceedings brought under 24 V.S.A. former §§4444 and 4445 "relating to the failure to obtain or comply with the terms and conditions of any required municipal land use permit." See 24 V.S.A. §§4451, 4452, and 4470(b).

In the present case, to the extent that the June 2003 complaint in this matter was brought under 24 V.S.A. former §§4444 and 4445, seeking injunctive relief and monetary penalties for Defendants' failure to obtain site plan approval or a zoning permit for the 1987 conversion of the rear building from a day care facility to a residential unit, this statute of limitations is applicable. As that conversion construction took place in early 1987, the June 16, 2003 complaint was instituted more than a year too late. The §4454(a) statute of limitations bars the assessment of fines under former §4444 and the imposition of injunctive relief under former §4445 for the early 1987 conversion of the rear building to a residential unit.

Other than the lack of that zoning permit and site plan approval, the operation or use of the rear building as a residential unit did not become a violation until the adoption of the 1998 Land Development Regulations, at which time the property as a whole no longer had sufficient area per dwelling unit. To the extent that the June 2003 complaint in this matter was brought under 24 V.S.A. former §§4444 and 4445, seeking injunctive relief and monetary penalties for the use of the rear building as a residential unit, that violation commenced at the earliest in 1998 and is well within the time period of the statute of limitations.

In any event, as analyzed in City of Burlington v. Richardson and as applied in the present case to the use of the rear building as a residential unit, the statute of limitations would only operate to bar enforcement for the period before June of 1988, even if the violations began earlier, because use violations must be analyzed as continuing or recurring violations. Compare 24 V.S.A. §4454(a) with the statutes of limitations discussed in, e.g.,

11

<u>Douglas v. City of Spokane</u>, 609 P.2d 979, 981 (Wash. Ct. App. 1980) (statute of limitations applicable only to construction violations and not to use violations); <u>Brown County v. Meidinger</u>, 271 N.W.2d 15, 19 (S.D. 1978) (use violation is an ongoing daily violation rather than a one-time violation); <u>City of Fontana v. Atkinson</u>, 212 Cal. App. 2d 499, 509; 28 Cal. Rptr. 25, 32 (Cal. Ct. App. 1963) (continuing violation), as cited in <u>City of St. Albans v. Hayford</u>, Docket No. 161-9-03 Vtec (Vt. Envtl. Ct., June 1, 2004).

As discussed in <u>Richardson</u>, this analysis rests on the principle that an important goal of zoning is to phase out nonconforming uses, and that new nonconforming uses are not authorized to be created. <u>In re Gregoire</u>, 170 Vt. 556, 558 (1999); see also <u>In re Appeal of Richards</u>, 2005 VT 23, ¶6. That is, property owners cannot initiate a new nonconforming use in violation of the municipal zoning ordinance and thereafter acquire a vested right to its continuation. To rule otherwise would create an incentive for property owners to make clandestine changes from an approved use to an illegal use, in hopes of obtaining the right to continue the clandestine illegal use by the passage of time. The statute of limitations in 24 V.S.A. §4454 limits the period for searching for defects in title due to hidden zoning violations to the same period applicable to searching for other title defects; it does not authorize the creation of new nonconforming uses.

Further, with regard to the City's request for injunctive relief to require Defendants Benoit and Kane to cease using the rear building as a residential rental unit, the §4454 statute of limitations is specifically not applicable to enforcement actions brought under 24 V.S.A. §4470(b)[8] to enforce decisions of the DRB, ZBA or Planning Commission (or of the Court sitting in place of those tribunals in a <u>de novo</u> appeal). Accordingly, the court can also proceed to consider injunctive relief as to the residential use of the rear building by virtue of the complaint filed in July of 2004 in the present case, seeking enforcement of the

---

[8] This exclusion was reiterated and carried forward in the revisions to this statute adopted in 2004, No. 115, §107.

12

2001 notice of violation as upheld in 2003 in In re: Appeal of Hayford, Docket No. 154-9-01 Vtec (Vt. Envtl. Ct., Mar. 6, 2003)

As of the 1998 denial of the Certificate of Occupancy, which was not appealed, the use of the rear building as a residential unit was not allowed. It was a violation subject to injunctive relief at least as of seven days after the July 11, 2001 Notice of Violation, that is, July 18, 2001. It certainly was a violation as of March 6, 2003, when the Court upheld the 2001 Notice of Violation and the decision was not appealed. The use of the rear building as a residential unit remained a violation as of December 15, 2005, when the Court denied approval of the unit in the rear building as a change to a nonconforming use.

Accordingly, based on the foregoing, the City's request for injunctive relief is GRANTED. It is hereby ORDERED and ADJUDGED that Defendants Benoit and Kane shall cease use of the rear building as a residential unit as soon as it may be vacated under the laws applicable to residential rental housing.

An appropriate monetary penalty would cover the municipal costs of enforcement, which is stipulated to be $4,500, and would also remove at least a significant portion of the financial benefit obtained by Defendants' operation of the residential unit in the rear building contrary to law, after they were notified of the violation. The Court is somewhat handicapped in making this determination by the lack of specific information provided by the parties as to the periods during which the apartment in the rear building was occupied as opposed to vacant, and the rental amounts received over the time period that the property was in violation, especially during the Hayfords' ownership. The parties have stipulated only that the actual total amount of rent from the sixth unit was $14,300 during the 34 months of ownership (prior to trial) by Defendants Benoit and Kane (from July 1, 2003 through April 30, 2006), which averages to $420.59 per month or approximately $13.83 per day. This amount presumably takes into account any periods of vacancy during that time period, as the parties also stipulated that the rental amount in June 2003, the last

13

month of the Hayfords' tenure, was $760. In the absence of any more specific information as to the vacancy rate or the rental amount during the violation period attributable to Defendants Hayford, we will use the same daily figure. The violation period attributable to Defendants Hayford is measured from July 18, 2001, the effective date of the 2001 Notice of Violation (after the seven-days-to-cure) through June of 2003.

The Court has determined not to impose the full $13.83 per day, recognizing that during the years since these asserted violations were first litigated in the early 1990s, errors had been made in the City's administration of its ordinances, and reasonable arguments were being made and litigated that the apartment in the rear building should not be considered to be a violation.

Accordingly, based on the foregoing, it is hereby ORDERED and ADJUDGED that a penalty of $7.50 per day is hereby imposed, resulting in the following separate penalties to be paid as follows: Defendants Hayford shall pay a penalty of $5,347.50 for the 713-day period of violation from July 18, 2001 through June 30, 2003; and Defendants Benoit and Kane shall pay a penalty of $7,762.50 for the 1035-day period of violation from July 1, 2003 through April 30, 2006.

This decision and order, and the accompanying judgment order, conclude this enforcement action.

Done at Berlin, Vermont, this 12th day of February, 2007.

_____
Merideth Wright
Environmental Judge

14